**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 04-2086

ALEJANDRO DELACRUZ-SOTO,

    Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR 04-118 MV)***

---

Jess R. Lilley, Lilley Law Offices, Las Cruces, New Mexico, for Defendant-Appellant.**

---

Before **EBEL**, **MURPHY** and **MCCONNELL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

*After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**Defendant-Appellant Alejandro Delacruz-Soto also made a pro se filing in this case.

In January 2004, Defendant Alejandro Delacruz-Soto, an alien who previously had been deported after being convicted of an aggravated felony, pled guilty to a charge of being found in the United States in violation of 8 U.S.C. §§ 1326(a)(1)&(2) and (b)(2).[1]  The district court sentenced him, inter alia, to 46

---

[1] 8 U.S.C. § 1326 provides, in pertinent part:

(a) In general

    Subject to subsection (b) of this section, any alien who—

        (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

        (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

    shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

    Notwithstanding subsection (a) of this section, in the case of

(continued...)

months' imprisonment. Defendant now appeals. Defendant's counsel filed an Anders brief in this case, and we take this occasion to remind counsel who file Anders briefs of their responsibility to provide us with a sufficient record so that we can conduct our own review of the record to see if there is reversible error. We hold that defendants convicted under 8 U.S.C. § 1326 cannot, in that criminal proceeding, challenge a prior aggravated felony conviction used to enhance the penalties under § 1326(b)(2) except on the ground that the defendant was denied counsel in that prior felony proceeding. The appeal also addresses Eighth Amendment and ineffective-assistance issues. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **AFFIRM** the district court's judgment.

## I. Overview of the Issues and Need for Anders Counsel to Submit All Relevant Parts of the Record

On appeal, Defendant's court-appointed attorney filed an Anders brief and moved to withdraw as counsel. See Anders v. California, 386 U.S. 738, 744 (1967). Anders allows attorneys who believe an appeal to be frivolous to advise

---

[1](...continued)
         any alien described in such subsection . . .

               (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . . .

the court of that fact, request permission to withdraw from the case, and submit a brief citing to those portions of the record that arguably support the appeal.  Id. In the Anders brief in the case at bar, defense counsel asserts that Defendant wishes to challenge his sentence on two grounds:

1. He was sentenced to too much time in prison, because an increase in his base offense level was based on his 1999 conviction for Third Degree Sexual Abuse—a crime of which he was actually innocent.

2. His sentence is excessive and violates the Eighth Amendment's prohibition against cruel and unusual punishment.

Defendant was afforded an opportunity to respond to the Anders brief.  In a letter to this court, Defendant states that he "feel[s] [he] was wrongly represented on this case and lied to" by his counsel.  Defendant requests a new attorney for this appeal.  In a separate motion seeking appointment of successor appellate counsel, filed nearly one year after the Anders brief, defense counsel also asserts that the trial court erred in applying the Sentencing Guidelines in a mandatory fashion, in violation of United States v. Booker, 125 S. Ct. 738 (2005).

We have fully examined the proceedings, as required by Anders, 386 U.S. at 744, and conclude that Defendant's appeal is wholly frivolous.  In order to conduct this examination, we sua sponte ordered a court reporter to file transcripts of Defendant's guilty plea and sentencing hearings, which defense counsel had not designated as part of the record.

- 4 -

It is true that under Fed. R. App. P. 10(b)(2), the appellant is given the responsibility of providing us with the appropriate record for appeal. However, in this case we ordered a court reporter to file the transcripts of Defendant's guilty plea and sentencing hearing because we believed those materials were necessary in order for us to conduct a full examination of all the proceedings as <u>Anders</u> requires. See <u>Anders</u>, 386 U.S. at 744. This conclusion is buttressed by the Supreme Court's decision in <u>Entsminger v. Iowa</u>, 386 U.S. 748 (1967). In <u>Entsminger</u>, the defendant's court-appointed counsel, "apparently believing that the appeal was without merit, failed to file the entire record of petitioner's trial," instead filing only a "modified transcript" that contained "the Information or Indictment, the Grand Jury Minutes, the Bailiff's Oath, Statement and Instructions, [and] various orders and judgment entries of the court, but . . . not . . . the transcript of evidence nor the briefs and argument of counsel." 386 U.S. at 749-50. The Supreme Court held that under such circumstances, the defendant "was precluded from obtaining a complete and effective appellate review of his conviction . . . on the bare election of his appointed counsel." <u>Id.</u> at 752.

Our consideration of the necessity of filing a transcript or equivalent report does not call into question the results in those cases in which a sufficient report of the events below allowed us to conduct an <u>Anders</u> examination without examining particular transcripts. In some cases a "complete and effective appellate review,"

Entsminger, 386 U.S. at 752, is possible without the inclusion of certain documents in the record. However, in the future defense counsel who file an Anders brief generally should ensure that copies of all possibly relevant transcripts are included in the record on appeal. In the future, we may deny counsel's Anders brief and motion to withdraw unless counsel ensures that we have an adequate record before us to satisfy both counsel's obligation to his or her client and our appellate review obligation under Anders and Entsminger. See United States v. Clark, 944 F.2d 803, 804 (11th Cir. 1991) (per curiam); United States v. Williams, 894 F.2d 215, 216-17 (7th Cir. 1990) (per curiam).

## II. Defendant's Booker Claim

### A. Scope of Defendant's Booker Claim

In Booker, the Supreme Court held that the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. To remedy the constitutional infirmity created by the reliance of the mandatory Sentencing Guidelines on certain types of judge-found facts, the Court severed the provision of the Sentencing Reform Act making sentencing courts' application of the Guidelines mandatory. Id. (excising 18 U.S.C. § 3553(b)(1)).

As we noted in <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727 (10th Cir. 2005) (en banc), "there are two distinct types of error that a court sentencing prior to <u>Booker</u> could make." <u>Id.</u> at 731. What we termed "constitutional <u>Booker</u> error" occurs when a district court "err[s] by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." <u>Id.</u> (quotation omitted). What we termed "non-constitutional <u>Booker</u> error" occurs when a district court "err[s] by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." <u>Id.</u> at 731-32 (quotation omitted).

This case presents us with only a non-constitutional <u>Booker</u> error. The record establishes that, except for the fact of Defendant's prior convictions, the district court relied solely upon facts admitted by Defendant in his guilty plea in calculating Defendant's sentence.

**B.     Plain Error Analysis**

<u>Booker</u> applies to "all cases on direct review." <u>Booker</u>, 125 S. Ct. at 769. However, defense counsel did not assert at trial that the district court erred in applying the Sentencing Guidelines in a mandatory fashion. Indeed, defense

counsel's argument at sentencing reveals an acceptance of the Guidelines as mandatory:

> I've looked at this thing, in explaining to [Defendant] that he's going to get so much time, and I've tried to look for something I can argue and something I can bring before the Court. Now, since the guidelines were changed to kind of give a step tier process to these priors, it's kind of taken out some of the arguments that I would have liked to make. . . . He is looking at a lot of time, Judge, I would ask the Court to give him as little time as possible, at the low end of the guideline range. I don't have any—any specific departure argument, because I just don't—didn't see any here. I think certainly at the low end of the guideline range is enough time to impose on Mr. Delacruz . . . .

Because Defendant did not raise this issue below, we review the district court's sentencing decision for plain error. See Gonzalez-Huerta, 403 F.3d at 732.

To establish plain error, Defendant must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. See United States v. Cotton, 535 U.S. 625, 631 (2002); see also United States v. Trujillo-Terrazas, 405 F.3d 814, 818 (10th Cir. 2005). If the error meets all these conditions, a reviewing court may exercise discretion to correct the error if allowing the error to stand would seriously affect the fairness, integrity, or public reputation of judicial proceedings. See Cotton, 535 U.S. at 631-32; Trujillo-Terrazas, 405 F.3d at 818.

Defendant easily fulfills the first two prongs of the plain-error analysis in this case. The district court erred in treating the Guidelines as mandatory in

sentencing Defendant.  See Trujillo-Terrazas, 405 F.3d at 818; Gonzalez-Huerta, 403 F.3d at 732.  The court's error is plain.  See Trujillo-Terrazas, 405 F.3d at 818-19; Gonzalez-Huerta, 403 F.3d at 732.  Thus, the primary issue in this analysis is whether Defendant can satisfy the third and fourth prongs of plain-error review.  Because Defendant cannot satisfy the fourth prong of this review, we need not determine whether he can satisfy the third prong, since he must satisfy both in order to obtain relief.  See Gonzalez-Huerta, 403 F.3d at 736.

Under this fourth prong, if a plain error seriously affects the integrity, fairness, or public reputation of judicial proceedings, it is in the discretion of the reviewing court to correct the error.  Johnson v. United States, 520 U.S. 461, 467 (1997).  "In the instance of non-constitutional error the standard for satisfying the fourth prong of the plain error test is demanding."  United States v. Dazey, 403 F.3d 1147, 1178 (10th Cir. 2005).  Indeed, "failing to correct non-Sixth Amendment Booker error when the defendant has failed to preserve the error in the district court will rarely be found to [have] seriously affected the fairness, integrity, or public reputation of judicial proceedings."  United States v. Sierra-Castillo, 405 F.3d 932, 941-42 (10th Cir. 2005).

Gonzalez-Huerta involved nearly identical facts to the case at bar. Gonzalez-Huerta pled guilty to illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a)-(b)(2), and received a sentence at the bottom of the Guidelines

range.  Gonzalez-Huerta, 403 F.3d at 730.  We held that Gonzalez-Huerta failed

to satisfy the fourth plain-error prong, noting:

> The error of which [the defendant] complains is not the substantive
> error first recognized in Blakely [v. Washington, 124 S. Ct. 2531
> (2004),] and which Booker sought to eliminate—namely, that the
> Sixth Amendment is violated when a judge, rather than a jury, finds
> facts that mandatorily increase a defendant's sentence.  Rather, the
> error in [the defendant]'s case—that the District Court applied the
> Guidelines mandatorily—is only error insofar as it runs afoul of the
> Court's remedy for the unconstitutional implications of the
> Guidelines. . . . The fortuity of the Court's choice to excise 18 U.S.C.
> § 3553(b)(1), instead of a remedy more directly related to the
> underlying constitutional problem, is key to our determination that
> the District Court's erroneous—although not constitutionally
> erroneous—mandatory application of the Guidelines is not
> particularly egregious or a miscarriage of justice.
>
> Moreover, the purpose of the Guidelines was to promote
> uniformity in sentencing so as to prevent vastly divergent sentences
> for offenders with similar criminal histories and offenses. . . . In
> doing so, the courts and the United States Sentencing Commission
> have established national norms for sentencing that are embodied in
> the Guidelines. . . . Here, [the defendant] received a sentence that is
> within this national norm and the record is devoid of any mitigating
> evidence.  Given that his sentence is consistent with this national
> norm and there is no record evidence to support a lower sentence, we
> cannot conclude that [the defendant]'s sentence is particularly
> egregious or a miscarriage of justice.
>
> Further, for the last eighteen years, every federal court has
> given the Guidelines tacit, and in most cases explicit, approval,
> applying them to tens of thousands of federal sentences.  In this
> regard, we agree with the First Circuit that "one cannot possibly say
> that all sentences imposed before Booker threatened the fairness,
> integrity, or public reputation of judicial proceedings, or undermined
> our confidence in the outcome of the sentence, simply because the
> Guidelines were mandatory."

Indeed, courts have held that sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended. For example, the courts generally have held the fourth prong met when the sentence exceeds the statutory maximum, when the sentencing court employs an improper burden of proof, and when the sentencing court denies the defendant his right to allocution. Here, we are not faced with a similar scenario where basic notions of justice are jeopardized. Hence, we cannot hold, based upon the culmination of these factors, that the mandatory application of the Guidelines in this case—while error—is a particularly egregious one that would result in a miscarriage of justice or otherwise call the judiciary into disrepute unless we remanded.

403 F.3d at 738-39 (footnotes, citations omitted).

For the same reasons that we discussed in Gonzalez-Huerta, Defendant cannot show that the district court's plain error affects the integrity, fairness, or public reputation of judicial proceedings. Accordingly, we decline to exercise our discretion to correct the district court's non-constitutional Booker error.

## III. Defendant's Claim that his Sentence-Enhancing Previous Conviction was Improper

In sentencing Defendant, the district court found that Defendant had committed a previous felony that was a crime of violence, justifying a sixteen-level increase in Defendant's offense level under § 2L1.2(b)(1)(A) of the Guidelines. The court made this finding despite Defendant's vague assertion that

he pled guilty to the previous felony when he was in fact innocent. The court did not explicitly address Defendant's contention, and did not err in not doing so.[2]

In Custis v. United States, 511 U.S. 485 (1994), the Supreme Court held that a defendant in a federal sentencing proceeding could not collaterally attack the validity of prior state convictions used to enhance his or her sentence under the Armed Career Criminal Act of 1984 ("ACCA"). Id. at 487. The Court crafted a narrow exception for collateral attacks on prior convictions obtained in proceedings in which the Constitution requires that a defendant be afforded counsel, but where the defendant was not provided with an attorney. Id. In justifying its refusal to allow defendants in ACCA cases to challenge prior convictions on other grounds, the Court stated:

> Ease of administration . . . supports the distinction. . . . [F]ailure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

> The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. . . . [I]nroads on

---

[2]Moreover, to the extent that Defendant might argue that Booker required a jury–and not the court—to find that (1) Defendant committed the Iowa felony; and (2) the Iowa felony was a crime of violence, that argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224 (1998), and United States v. Moore, 401 F.3d 1220 (10th Cir. 2005).

the concept of finality tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice. . . . [P]rinciples of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court to deprive the state-court judgment of its normal force and effect in a proceeding that has an independent purpose other than to overturn the prior judgment. These principles bear extra weight in cases in which the prior convictions, such as one challenged by [the defendant], are based on guilty pleas, because when a guilty plea is at issue, the concern with finality served by the limitation on collateral attack has special force.

We therefore hold that § 924(e) does not permit [the defendant] to use the federal sentencing forum to gain review of his state convictions. Congress did not prescribe and the Constitution does not require such delay and protraction of the federal sentencing process.

511 U.S. at 496-97 (quotations, citations, and alterations omitted).

The Supreme Court reaffirmed its Custis holding in Daniels v. United States, 532 U.S. 374 (2001), and Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001), two cases decided after Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In Daniels, the Court stated:

[W]e have held that if, by the time of sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence. This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal

- 13 -

sentencing proceedings. No other constitutional challenge to a prior conviction may be raised in the sentencing forum.

After an enhanced federal sentence has been imposed pursuant to the ACCA, the person sentenced may pursue any channels of direct or collateral review still available to challenge his prior conviction. . . .

If, however, a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under [28 U.S.C.] § 2255.

532 U.S. at 382 (citations omitted). In Coss, the Court extended the Daniels rule

to 28 U.S.C. § 2254 proceedings. See Coss, 532 U.S. at 403-04 (2001).[3]

---

[3]In Coss, the Court stated:

[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under [28 U.S.C.] § 2254 on the ground that the prior conviction was unconstitutionally obtained.

. . . [W]e recognize an exception to the general rule for § 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment . . . .

(continued...)

We have not yet specifically applied <u>Custis</u> in a published opinion addressing 8 U.S.C. § 1326 or U.S.S.G. § 2L1.2. However, several other courts have explicitly applied <u>Custis</u> in § 1326 cases. <u>See, e.g.</u>, <u>United States v. Gutierrez-Cervantez</u>, 132 F.3d 460, 462 (9th Cir. 1997). At least one district court within the Tenth Circuit has applied <u>Custis</u> in a § 1326 case. <u>See</u> <u>United States v. Holguin-Enriquez</u>, 120 F. Supp. 2d 969, 970 (D. Kan. 2000) (noting that "[c]lear Tenth Circuit precedent . . . prohibits the court from considering a collateral attack of a prior conviction when applying the Guidelines" and therefore rejecting a defendant's contention that a state-court conviction used to increase his sentence under U.S.S.G. § 2L1.2(b)(1)(A) was invalid because it was entered by a court without jurisdiction over the defendant).

The text of 8 U.S.C. § 1326, which does not explicitly authorize collateral attacks on the convictions underlying a § 1326(b)(1)-(2) prosecution, confirms the propriety of these courts' decision to apply <u>Custis</u> in such cases. Under <u>Custis,</u> a

---

[3](...continued)
    . . . .

      The general rule we have adopted . . . reflects the notion that a defendant properly bears the consequences of either forgoing otherwise available review of a conviction or failing to successfully demonstrate constitutional error.

532 U.S. at 403-05 (citations omitted).

defendant may collaterally attack a prior conviction in a subsequent proceeding when specifically authorized to do so by statute. See 511 U.S. at 491-92; see also, e.g., 21 U.S.C. § 851(c) (setting out procedures that a defendant must follow to object to the enhancement of a narcotics sentence based on a prior conviction). However, the only collateral attack acknowledged by § 1326 is an attack on the deportation order that a defendant has violated, not on the underlying conviction(s) used to enhance the penalties that the defendant will face for that violation under § 1326(b)(1)-(2). See 8 U.S.C. § 1326(d).[4]

The fact that § 1326(d) allows for limited collateral attacks on underlying deportation orders does not provide a defendant prosecuted under § 1326(b)(2) with separate authority to challenge an underlying aggravated felony conviction.

---

[4] 8 U.S.C. § 1326(d) provides:

Limitation on collateral attack on underlying deportation order

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

Challenging an underlying deportation order is far different from challenging an underlying aggravated felony conviction. A deportation order is the result of a federal agency proceeding, the review of which is limited by statute. By contrast, an aggravated felony conviction is a result of a sovereign's exercise of its prosecutorial power and a court's exercise of its adjudicative power, and is subject to more rigorous judicial review. As such, a deportation order and an aggravated felony conviction are very different determinations, and Congress's decision to sanction collateral attacks on the former but not the latter is a result of the very different due process considerations that surround the use of each type of determination in a later criminal proceeding. See generally United States v. Rangel de Aguilar, 308 F.3d 1134, 1137-38 (10th Cir. 2002), cert. denied, 537 U.S. 1241 (2003). Moreover, § 1326(d) places strict limits on the circumstances in which such underlying deportation orders can be challenged, suggesting that the provision should be construed narrowly, so as not to encompass challenges to underlying aggravated felony convictions.

The Supreme Court's decision in Booker does not disturb the Court's previous decision in Custis, or the many opinions that apply Custis. It is true that in the wake of Booker, district courts conducting sentencing proceedings have a renewed freedom to consider, not only the Guidelines, but also the "history and characteristics of the defendant" and "the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (4), and (6); see Trujillo-Terrazas, 405 F.3d at 819 ("Booker suggests that the sentencing factors articulated in § 3553(a), which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion."). However, courts' renewed freedom to consider the factors set out in § 3553(a) does not allow sentencing courts in subsequent sentencing proceedings to reconsider whether a defendant is innocent of a prior aggravated felony conviction.

The result in Custis did not hinge on the proper application of the Sentencing Guidelines, which Booker rendered merely advisory, but rather on respect for finality, comity, and the orderly administration of justice. See Custis, 511 U.S. at 496-97. Moreover, the fact that the Court reaffirmed Custis in Daniels and Coss—habeas cases in which the district court was not applying the Guidelines at all—buttresses the conclusion that Custis remains good law in the wake of Booker. See Daniels, 532 U.S. at 382; Coss, 532 U.S. at 403-04.

Our analysis in Trujillo-Terrazas does not cast doubt on this determination. In Trujillo-Terrazas, we examined the nature of a defendant's criminal history to determine whether the defendant could satisfy the third prong of plain-error review, and concluded that "[t]he relatively trivial nature of [the defendant]'s criminal history is at odds with the substantial 16-level enhancement

- 18 -

recommended by the Guidelines for this conduct." 405 F.3d at 819. However, our analysis in Trujillo-Terrazas did not involve re-examining the evidence in an earlier proceeding to determine whether the court erred in reaching its judgment; instead, we conducted a far less intrusive examination. As such, Trujillo-Terrazas does not cast doubt on the continued validity of Custis in the wake of Booker, or control the result in this case.

Barring a defendant from claiming that he or she is actually innocent of an underlying state-court conviction in most § 1326(b)(1)-(2) cases is also equitable. As the Supreme Court noted in Daniels:

> [o]ur system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction. He may raise constitutional claims on direct appeal, in postconviction proceedings available under state law, and in a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 . . . .

532 U.S. at 381; see also United States v. Garcia, 42 F.3d 573, 581 (1994) ("[H]abeas is the traditional channel in English and American law for collaterally attacking a conviction."). See generally 1 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 5.1 (4th ed. 2001); Wayne R. LeFave & Jerold H. Israel, 5 Criminal Procedure § 27 (1999). Thus, the fact that a defendant generally may not raise such a claim in a later proceeding does not deprive him or her of the chance to have his claim heard. Moreover, this bar helps give effect to a "presumption deeply rooted in our jurisprudence: the presumption of regularity

- 19 -

that attaches to final judgments, even when the question is waiver of constitutional rights." Parke v. Raley, 506 U.S. 20, 29 (1992) (quotation omitted).

Therefore, we hold that, with the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(1)(A) cannot consider a collateral attack on a prior conviction. In this case, Defendant was convicted of Third Degree Sexual Abuse in an Iowa county court following a November 1998 arrest. In December 1999, he was sentenced to ten years' imprisonment based on that conviction; the sentence was suspended for two years' probation. Because he does not allege that he was denied the right to counsel in the state court proceeding, Defendant simply could not attack that 1999 conviction now, at the sentencing proceeding in this subsequent and unrelated case.

## IV.   Defendant's Eighth Amendment Claim

We review de novo alleged violations of the Eighth Amendment. See United States v. McVeigh, 153 F.3d 1166, 1217 (10th Cir. 1998). In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. See United States v. Hughes, 901 F.2d 830, 832 (10th Cir. 1990) ("The eighth amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of

pain. Within this limitation . . . . [i]f a sentence imposed is within the statutory limits, the appellate court generally will not regard it as cruel and unusual punishment.") (internal quotations omitted).[5]

In this case, Defendant's sentence was within the statutory limits. Defendant's sentence was also at the bottom of the range specified by the Sentencing Guidelines—a range that defines the national norm for sentencing for this particular crime. See Gonzalez-Huerta, 403 F.3d at 738-39. Defendant's sentence does not resemble the sentences of disproportionate severity that courts have struck down as cruel and unusual in the past. See, e.g., Weems v. United States, 217 U.S. 349, 358, 364, 381 (1910) (fifteen years at hard labor for falsifying a government form). Thus, Defendant's sentence was not excessive and does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

## V. Defendant's Ineffective-Assistance Claim

---

[5]It is clear that the "statutory limits" to which the Hughes court refers are the upper limits of punishment that Congress has legislatively specified for the violation of a given statute. See Hughes, 901 F.2d at 832 (prefacing a discussion of "statutory limits" with the statement that "the determination of proper penalties for crimes is a matter for the legislature") (quotation omitted); cf. United States v. Green, 405 F.3d 1180, 1191-94 (10th Cir. 2005) (rejecting the Booker definition of "statutory maximum" in interpreting whether a defendant's waiver of appellate rights should not be enforced because he was sentenced above the "statutory maximum" as defined by United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam)).

We have previously stated that

> [i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.

United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). "[E]ven if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings . . . so the reviewing court can have the benefit of the district court's views." Id. Therefore, "there is only a slight chance that we will forego the development of a factual record or at least an opinion by the district court on the subject in the first instance." Id. at 1241. After review of the Anders brief, other submissions from the parties, and the record in this case, we see no reason to depart from this general rule.[6]

## VI.    Conclusion

We can find no issues in this case that might properly be the subject of an appeal. Accordingly, we **GRANT** defense counsel's motion to withdraw, **DENY**

---

[6]To the extent that Defendant requests a new attorney based on his attorney's filing of an Anders brief, we note that the mere filing of such a brief does not provide a defendant with the right to the appointment of a new attorney. See Anders, 386 U.S. at 744 (noting that if, "after a full examination of all the proceedings," an appellate court finds "legal points arguable on their merits . . . it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal").

- 22 -

Defendant's motion for appointment of new counsel, **DENY** defense counsel's

motion for appointment of successor appellate counsel, and **AFFIRM**

Defendant's conviction and sentence.