[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 3, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16270
Non-Argument Calendar

_____

D. C. Docket No. 04-00049-CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWIN M. MACK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 3, 2006)**

Before CARNES, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Edwin Mack appeals his convictions and sentences for multiple drug and

firearms offenses in violation of 21 U.S.C. §§ 841 and 846, 18 U.S.C. § 922(g), and 26 U.S.C. § 5861. After a thorough review of the record, we affirm.

I. Background

Mack was indicted for conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846 (Count 1); distribution of crack cocaine, in violation of 21 U.S.C. § 841 (Counts 2 and 3);[1] possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841 (Count 4); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 5); and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861 (Count 6). The government indicated that it intended to seek enhanced penalties, including mandatory life imprisonment on Count 4, under 21 U.S.C. § 851.

Mack originally pleaded guilty to all counts without a written plea agreement, but when he realized he faced a mandatory term of life imprisonment, he moved to withdraw his plea. Although the court had questioned Mack extensively during the plea colloquy and had explained the possible penalties, after a hearing on the motion, the court granted Mack's motion to withdraw the plea. Prior to trial, the court determined that it would conduct a bifurcated trial,

---

[1] Counts 1 and 2 also named Mack's co-conspirator, John Howard.

separating Count 5 because it required proof that Mack had prior felony convictions.

The evidence at trial established the following facts: Fort Myers Police Officer Richard Davis, acting as a drug buyer, approached Mack at Mack's home to purchase crack cocaine. Mack was hesitant to make a deal, but agreed after co-conspirator John Howard arrived and confirmed that he did not think Davis was police. Mack gave two pieces of crack to Howard, who then gave the drugs to Davis in exchange for $40. Davis later engaged in another, similar sale with Mack. Field tests confirmed that the pieces were crack. Following the buys, police obtained and executed a search warrant, at which time they found a shotgun in Mack's house, the money Davis used in the undercover buys, and drugs in a jacket in the trunk of Mack's car. DEA forensic chemists confirmed that the amount of crack found exceeded 81 grams. An ATF Agent confirmed that the firearm was manufactured in Massachusetts. In a subsequent interview, Mack admitted that he kept a shotgun in the house for protection and that he had crack cocaine for personal use, but he denied selling drugs.

During its case-in-chief, the government notified the court that it wished to call Vincent Doyle, a witness for the defense, to testify about a traffic stop involving Howard and Mack that resulted in Howard's arrest on drug charges

3

unrelated to the instant charges. Mack did not object. The court indicated that it normally would not allow such testimony because it did not relate to the instant charges, but after defense counsel stated that he wanted the testimony to come in, the court allowed the testimony. Doyle then testified that he had arrested Howard on drug charges during a routine traffic stop. Mack was a passenger in the car, but police did not find any drugs on him. The court instructed the jury that the crack found on Howard was not part of the conspiracy.

After the government rested its case-in-chief, Mack moved for judgment of acquittal, challenging the chain of evidence and whether the government had established that Mack knew the shotgun had to be registered. The court denied the motion. Defense counsel called one witness, and Mack did not testify. The government had no rebuttal witnesses, and Mack renewed his motion for judgment of acquittal, which the court again denied. The jury convicted Mack on Counts 1-4 and 6, specifically concluding that the amount of drugs exceeded 50 grams.

The court then proceeded on Count 5. The government proffered evidence that Mack had been convicted of sale of cocaine and that his rights had been restored, except for the right to possess a firearm. The government also re-submitted Mack's statement, in which Mack admitted that he was a convicted felon. Although defense counsel objected to the tape, the court permitted it into

4

evidence. The jury convicted Mack on Count 5.

The probation officer prepared a presentence investigation report ("PSI"), grouping the offenses together under U.S.S.G. § 3D1.2(c) and (d) and assigning a base offense level of 32 based on the amount of drugs. This level was increased by 2 for possession of a firearm, § 2D1.1(b)(1), and by 2 for role in the offense, § 3B1.1(c), resulting in a total offense level of 36. Mack, however, qualified as a career offender under § 4B1.1; therefore, his offense level was raised to 37. The probation officer then listed the prior convictions, including several prior drug convictions, resulting in a criminal history category IV. Because Mack was a career offender, the criminal history category was raised to VI.

The probation officer noted that the government had filed for an enhancement under 21 U.S.C. § 851. As a result, Mack faced a statutory mandatory term of life imprisonment on Count 4. Under the sentencing guidelines, Mack faced a range of 360 months to life imprisonment, but that range became life under U.S.S.G. § 5G1.1(c)(2) due to the statutory life term on Count 4. Mack made no objections to the PSI.

At sentencing, Mack made no objections to the PSI, but moved for a downward departure based on his age and health. Mack refused to admit or deny his prior convictions. The court denied the downward departure, finding no basis

5

for it under the facts, and noting that it had no discretion because Count 4 carried a mandatory life sentence. The court adopted the PSI and, after considering the sentencing factors of 18 U.S.C. § 3553(a), sentenced Mack to 360 months on Counts 1 through 3, 120 months on Counts 5 and 6, and a mandatory life imprisonment on Count 4, all to run concurrently. Mack made no objections to the sentence. He now appeals.

## II. The Appeal

On Appeal, Mack challenges: (1) whether the court had jurisdiction over the offenses; (2) whether the court properly admitted Doyle's testimony; and (3) whether his sentence was improper because (a) it was based on crack cocaine rather than powder cocaine, and (b) it amounted to cruel and unusual punishment.

### 1. Jurisdiction

Mack first argues that the federal court lacked jurisdiction over his offenses because the federal authorities were never involved in his case, and his offenses should have been prosecuted in state court. He notes that the amount of drugs was small and the firearm had no nexus to interstate commerce. He further challenges jurisdiction over the firearm offense as an invalid exercise of Congress's Commerce Clause power.

Mack did not move to dismiss the indictment, and his motions for judgment

6

of acquittal did not challenge the court's jurisdiction.  Nevertheless, because subject-matter jurisdiction cannot be waived, we review the issue de novo.  United States v. Giraldo-Prado, 150 F.3d 1328, 1329 (11th Cir. 1998).

In this case, there was no error, as the court retained jurisdiction over the offenses.  First, the district court's jurisdiction is controlled by 18 U.S.C. § 3231, conferring jurisdiction over "offenses against the laws of the United States."  18 U.S.C. § 3231.  As the offenses for which Mack was charged are offenses against the United States, see 18 U.S.C. § 922(g), 21 U.S.C. §§ 841 and 846, and 26 U.S.C. § 5681, the court had jurisdiction over the case.

Moreover, this court repeatedly has upheld the constitutionality of both § 841 and § 922(g).  See  United States v. Wright, 392 F.3d 1269, 1280 (11th Cir. 2004), cert. denied, 125 S.Ct. 1751 (2005) (upholding § 922(g)); United States v. Osburn, 955 F.2d 1500, 1502 (11th Cir. 1992) (§ 841); United States v. Collier, 478 F.2d 268, 272-73 (5th Cir. 1973)[2] (same).  We are bound by the decision of prior panels, and "only the Supreme Court or this Court sitting en banc can judicially overrule a prior panel decision."  Wright, 392 F.3d at 1280 (quoting United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004)).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

Finally, there is no merit to Mack's claim that § 922(g) is unconstitutional as applied. All the statute requires is that the government prove some "minimal nexus" to interstate commerce. United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001); United States v. Dupree, 258 F.3d 1258, 1260 (11th Cir. 2001). Here, the testimony at trial established that the firearm was manufactured in Massachusetts and found in Florida. This testimony was sufficient to establish the nexus.

### 2. Doyle's Testimony

Mack next argues that the court erred by admitting Doyle's testimony because it was highly prejudicial.

"The doctrine of invited error is implicated when a party induces or invites the district court into making an error." United States v. Harris, 443 F.3d 822, 823 (11th Cir. 2006) (quoting United States v. Stone, 139 F.3d 822, 838 (11th Cir. 1998)). Under such circumstances, this court is "precluded from reviewing that error on appeal." Harris, 443 F.3d at 823-24.

Here, Mack does not dispute that counsel invited the error when he informed the court that he wanted Doyle's testimony admitted. Thus, there was no error, and we do not review the issue. See also United States v. Jernigan, 341 F.3d 1273, 1289-90 (11th Cir. 2003) (finding that defendant whose counsel had affirmatively

stipulated to the playing of a tape-recorded statement had invited any error resulting from the jury's hearing the tape, and thus that any potential error was not reversible).

### 3. Sentence

### A. Crack Cocaine

In this third argument, Mack asserts that his sentence should have been calculated based on powder cocaine rather than crack because the government failed to establish that the drugs involved were crack.

Because Mack did not object to the sentencing calculations, we review for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005).

Under the guidelines, cocaine base refers to crack, which is "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." United States v. Munoz-Realpe, 21 F.3d 375, 377-78 (11th Cir. 1994). The evidence at trial established that the drugs found involved crack cocaine.

Moreover, as the government notes, Mack did not object to the PSI's factual findings that the offense involved crack. Therefore, the facts are deemed admitted. United States v. Burge, 407 F.3d 1183, 1191 (11th Cir. 2005). Accordingly, there

9

was no error, plain or otherwise, in the court's sentencing calculations.

> B. Cruel and Unusual Punishment

Because Mack failed to raise any objections to his sentences, review is for plain error. Rodriguez, 398 F.3d at 1298.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005) (quoting Ewing v. California, 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (internal quotes omitted)). "The Supreme Court has made it clear that '[o]utside the context of capital punishment, *successful* challenges to the proportionality of sentences [are] exceedingly rare.'" United States v. Raad, 406 F.3d 1322, 1323 (11th Cir.) (quoting Solem v. Helm, 463 U.S. 277, 289-90, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983)) (emphasis and alterations in original), cert. denied, 126 S.Ct. 196 (2005).

On Eighth Amendment challenges,

> a reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions.

Id. (quoting United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000)). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." Moriarty, 429 F.3d at 1024 (quoting United States v. Delacruz-Soto, 414 F.3d 1158, 1168 (10th Cir. 2005)).

Here, the sentence was dictated by the statutory mandatory sentencing provision. Mack has offered nothing to show that his sentence constitutes cruel and unusual punishment. See United States v. Dowd, 2006 WL 1594190, at *11-12 (11th Cir. June 13, 2006) (concluding that 305-month sentence was reasonable even in light of defendant's age (65) because defendant had nine prior convictions and had committed a violent felony at his age); see also United States v. Hanna, 153 F.3d 1286, 1288 (11th Cir. 1998) (upholding harsher sentence for crack cocaine because "imposing longer sentences on crack cocaine offenders is rationally related to the legitimate purpose of distinguishing between distinguishable drugs. . . Congress distinguished between the kinds of cocaine, not to discriminate against people, but because crack cocaine is more dangerous, more highly addictive, more easily available, and less expensive than powder cocaine."); United States v. Vasquez, 121 F.3d 622, 623 (11th Cir. 1997) (upholding harsher sentence for crack because crack was more dangerous than other forms of cocaine and warranted a higher penalty).

Additionally, this court has rejected challenges to the disparity between sentences for crack and powder cocaine, concluding that "there are numerous legitimate and non race-related reasons why Congress may have included the distinction between cocaine base and cocaine powder, and it is not for the courts to interfere in that determination." United States v. Matthews, 126 F.3d 1234, 1251 (11th Cir. 1999). Therefore, Mack cannot show that his sentence amounts to cruel and unusual punishment.

III. Conclusion

For the foregoing reasons, we AFFIRM Mack's convictions and sentences.