FILED
United States Court of Appeals
Tenth Circuit

August 16, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RAYMUNDO SALGADO-VEGA,

    Defendant - Appellant.

No. 10-2242
(D.C. No. 2:10-CR-01370-WJ-1)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **BALDOCK**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Raymundo Salgado-Vega was sentenced to 48 months' imprisonment for illegal reentry of an alien after being previously deported following a conviction for an aggravated felony, in violation of 8 U.S.C.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1326(a) and (b).  Proceeding *pro se*, Mr. Salgado-Vega challenges his sentence.

His appointed counsel, James P. Baiamonte, has filed a brief pursuant to <u>Anders</u>

<u>v. California</u>, 386 U.S. 738 (1967), moving to withdraw as counsel on the ground

that there is no nonfrivolous basis for an appeal.  For the reasons set forth below,

we agree with Mr. Baiamonte that the record in this case provides no nonfrivolous

basis for an appeal, and we therefore grant his motion to withdraw and dismiss

this matter.


## BACKGROUND

On February 15, 2010, United States Border Patrol agents determined by

means of remote video surveillance that two individuals were walking north from

the United States/Mexico border.  Border patrol agents investigated and found the

two individuals trying to hide in some brush.  One of these men was Mr. Salgado-

Vega.  Mr. Salgado-Vega admitted to being a citizen of Mexico and to being

illegally in the United States.

Further investigation revealed that Mr. Salgado-Vega had been previously

deported from the United States on December 11, 2009.  Patrol officers also

learned that the December 2009 deportation followed a conviction for forgery, a

felony punishable by five years imprisonment, on December 7, 1995, in the

Rockdale County Superior Court in Rockdale, Georgia.  For that offense, he was

sentenced to a two-year suspended sentence of confinement.  At the time of his

arrest on the instant violation, Mr. Salgado-Vega was on supervised release for the 2009 deportation. Including the 2009 deportation, Mr. Salgado-Vega had been deported four times prior to the instant reentry.

Trial on the current offense was scheduled for August 9, 2010. On August 3, 2001, Mr. Salgado-Vega sent a letter to his court-appointed counsel, Mr. Baiamonte, stating,

> I must make it clear . . . that I have never denied responsibility for the charge of Reentry of a removed Alien, under 8 U.S.C. § 1326(a), only. . . . I do hereby reiterate my desire to accept responsibility for said charge. In regards to the enhancing allegation pursuant to § 1326(b), I wish to emphasize the fact I'm reserving any right I might have to challenged the Constitutionality of said allegation for Federal Sentencing Enhancement Purposes.

R. Vol. 1 at 23. Mr. Salgado-Vega emphasized that his acceptance of responsibility was limited to the simple reentry provision, 8 U.S.C. § 1326(a), and did not include acceptance of the enhanced sentence under § 1326(b) for reentering after a prior deportation following the conviction for an aggravated felony:

> Therefore, Sir, please notify the District Attorney's Office my desire to enter an Agreement accepting responsibility per § 1326(a), only. I keep maintaining the Georgia Statute under which I was Convicted is not analogous to its Federal counterpart. Thus, it cannot be counted as an "Aggravated felony" for its use as an Enhancement of Sentence in the manner intended by the Government.

Id. The government, however, refused to accept a guilty plea that did not include pleas of guilt to both § 1326(a) and (b).

On August 6, 2010, the district court held a pretrial conference, and advised Mr. Salgado-Vega that any guilty plea made the morning of trial (the following Monday, August 9), after the witnesses and jurors were assembled, could not be used for an acceptance of responsibility to reduce his sentence. Mr. Salgado-Vega apparently maintained his refusal to plead guilty.

On the day of trial, August 9, 2010, before the jurors entered the court room, Mr. Baiamonte informed the court about Mr. Salgado-Vega's August 3, 2010, letter expressing an interest in only pleading guilty to § 1326(a). The following interchange occurred between the court and counsel:

> THE COURT: I mean, 1326(a) charges are generally for those illegal reentry offenses where there's no prior deportations based on prior state or federal felony convictions. Am I correct in that?
>
> MR. CAIRNS [government counsel]: That's correct, Your Honor. Typically, someone who's charged pursuant to 1326(a) only would have no . . . felony convictions.
> . . . .
>
> THE COURT: But Mr. Salgado-Vega, you've offered to plead to . . . 1326(a), but the government's not willing to accept your offer. So your only option if you want to enter into a plea agreement is to plead straight up to the indictment. Otherwise, I'm going to commence the jury trial.
> Do you need a minute to advise him of that, Mr. Baiamonte?
>
> MR. BAIAMONTE: We've gone over this at length, Your Honor.
> . . . .
>
> THE COURT: Okay, Mr. Salgado-Vega, let me first make sure you understand a couple of things. On the record here, . . . you have tendered a letter that says you were willing to plead just to

-4-

1326(a), which would not include any aggravated felony aspects, and the government is not willing to accept that plea, and so I want to make sure you understand I can't force the government to allow you to just plead to 1326(a). Do you understand that?

THE DEFENDANT: (Through the Interpreter) Yes.

THE COURT: Okay. Now, you have the right – you understand outside the doors we've assembled a group of prospective jurors who are going to try this case, and the government's ready to proceed this morning? Now, if you wish to enter a plea straight up to the indictment, just plead to the indictment, which would include 1326(a) and 1326(b), you have the right to do that. Do you understand, sir?

THE DEFENDANT: I wish to do that.

THE COURT: Okay. Before I accept your plea, I want to make sure that you understand that, by entering a plea the morning of trial where jurors have driven from different parts of the state to be here, where the United States government has flown in witnesses, some as far as Virginia, that the government is going to object to you getting any reduction for acceptance of responsibility. Do you understand that?

THE DEFENDANT: I do.

THE COURT: And that it will be up to me at the time of sentencing to decide whether or not you get any acceptance of responsibility? Do you understand that?

THE DEFENDANT: Yes.

Tr. of Jury Trial/Plea at 4-8, R. Vol. 3 at 7-11. After further discussion between the court and counsel about whether Mr. Salgado-Vega should just go ahead with trial, since it was unlikely he would receive a reduction in his sentence for acceptance of responsibility at this late date, Mr. Salgado-Vega conferred with his

counsel privately once again, following which Mr. Salgado-Vega indicated he wished to plead guilty to the entire indictment.

Thereafter, Mr. Salgado-Vega was placed under oath and pled guilty in the usual way, following a lengthy colloquy between the court and him concerning his understanding of the consequences of his guilty plea.

In preparation for sentencing under the advisory United States Guidelines Commission, Guidelines Manual ("USSG") (2009), the United States Probation Office prepared a presentence report ("PSR"). The Probation Office calculated a total adjusted offense level of 16, which included 8 points because Mr. Salgado-Vega had been previously deported following his conviction for forgery in Georgia, which the PSR determined qualified as an aggravated felony under USSG §2L1.2(b)(1)(C). The PSR's analysis is as follows: 8 U.S.C. § 1101(a)(43)(P) defines an aggravated felony as "an offense which either is falsely making, forging, counterfeiting, . . . a passport or instrument." 8 U.S.C. 1101(a)(48)(B) provides that "any reference to a term of imprisonment or sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." Thus, the fact that Mr. Salgado-Vega's sentence was a two-year suspended sentence of confinement did not make his forgery ineligible for aggravated felony status. The PSR therefore calculated a 16-level offense level.

Mr. Salgado-Vega's extensive criminal history placed him in criminal history category V. This yielded an advisory guidelines sentencing range of 41 to 51 months. Mr. Salgado-Vega filed no objections to the PSR.

Sentencing took place on October 25, 2010.[1] While the PSR and the government recommended against granting Mr. Salgado-Vega a three-level reduction in his total offense level for acceptance of responsibility, Mr. Salgado-Vega asked for a one-level reduction. He argued that, while he did not plead guilty until the trial was about to commence, he nonetheless spared everyone the actual trial. Mr. Salgado-Vega conceded the rest of the PSR was accurate, with the exception of that allegation that he had seventeen aliases. Mr. Salgado-Vega argued he only had one alias.

The district court rejected any argument for an acceptance of responsibility reduction, and concluded that the total offense level was 16 and the criminal history category was V. The court therefore imposed a sentence of 48 months, in the middle of the advisory guidelines range. It stated it had considered the sentencing factors of 18 U.S.C. § 3553(a), and it noted Mr. Salgado-Vega's extensive criminal history, specifically enumerating many of his prior offenses.

---

[1]Since Mr. Salgado-Vega had been on supervised release when he committed the instant offense, his actual sentencing was combined with a revocation of supervised release proceeding. He was sentenced to a concurrent 12-month sentence on the claim relating to revocation of supervised release.

Mr. Salgado-Vega endeavors to appeal that sentence. His notice of appeal contains the issues he wishes to bring up. As indicated, his appointed counsel has moved to withdraw as counsel pursuant to Anders. Mr. Salgado-Vega has submitted his notice of appeal. The government has declined to file a brief. Accordingly, we base our decision on counsel's brief, Mr. Salgado-Vega's notice of appeal, and our own careful review of the record.

**DISCUSSION**

In Anders, the Supreme Court held that if a defendant's counsel "finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." Anders, 386 U.S. at 744. Counsel must submit to both the court and his client a "brief referring to anything in the record that might arguably support the appeal." Id. The defendant may then "raise any points that he chooses." Id.

The reviewing court must examine all the proceedings to determine whether the appeal is frivolous. Id. If the court so finds, it may grant defense counsel's request to withdraw and dismiss the appeal. Id. "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) [the reviewing court] must, prior to decision, afford the indigent [defendant] the assistance of counsel to argue the appeal." Id.

Mr. Salgado-Vega argues in his pleading called a "Notice of Appeal" that his attorney was ineffective and that the district court erred in sentencing him without giving him the opportunity to make objections to the PSR, in particular to object to the denial of a three-level acceptance of responsibility reduction. His counsel also suggests that Mr. Salgado-Vega wishes to challenge the use of the Georgia conviction for forgery as an "aggravated felony" warranting an 8-level increase in his base offense level.

With respect to the ineffective assistance of counsel claims, we have stated that:

> [i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.

United States v. Galloway, 56 F 3d 1239, 1240 (10th Cir. 1995) (en banc). "[E]ven if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings . . . so the reviewing court can have the benefit of the district court's views." Id. Accordingly, "there is only a slight chance that we will forego the development of a factual record or at least an opinion by the district court on the subject in the first instance." Id. at 1241. After review of the Anders brief, Mr. Salgado-Vega's submissions, and the record in this case, we see no reason to depart from

this general rule.  See United States v. Delacruz-Soto, 414 F.3d 1158, 1168 (10th Cir. 2005).

Regarding his claim that he was somehow not allowed to make objections to the PSR, the record does not support that.  Mr. Salgado-Vega made no written objections, but at his sentencing, he raised his complaint that he did not have seventeen aliases, as the PSR stated, but only one.  And, his counsel argued for a downward departure for acceptance of responsibility, although recognizing that it was unlikely that he could get more than a one-point departure.  After discussion and argument, the court decided Mr. Salgado-Vega was entitled to no reduction for acceptance of responsibility.

Finally, with respect to the use of the Georgia forgery conviction to increase Mr. Salgado-Vega's base offense level, Mr. Salgado-Vega only argues (and not in his notice of appeal, but in other pleadings below) that the Georgia conviction was treated differently when he was on trial in California, presumably in federal court, for a similar illegal reentry charge.  But, we have no details about that California proceeding; and, in any event, its analysis would not control ours.  As to his counsel's analysis, he concurs with the PSR rationale for finding that the Georgia conviction qualifies as an aggravated felony under the relevant statute.  We find no fault with that analysis.[2]

---

[2]Furthermore, Mr. Salgado-Vega pled guilty to a violation of 8 U.S.C. § 1326(b), which includes the determination that he had committed an aggravated
(continued...)

We have carefully reviewed the record, and it shows no error in the court's determination of the sentence for Mr. Salgado-Vega. We perceive no non-frivolous grounds for challenging the sentence imposed in this case.

## CONCLUSION

For the foregoing reasons, we GRANT defense counsel's motion to withdraw and DISMISS this matter.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[2](...continued)
felony. So, barring a challenge to the validity of his guilty plea, which he does not make, he has waived the right to challenge that determination.