United States Court of Appeals,

Fifth Circuit.

No. 92-4670

Summary Calendar.

Raul LARA, Jr., Petitioner,

v.

U.S. PAROLE COMMISSION, Respondent.

May 14, 1993.

Appeal from the United States Parole Commission.

Before REAVLEY, JONES and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

Raul Lara, Jr. was convicted and sentenced in Mexico for "simple intentional homicide and robbery." Pursuant to a prisoner transfer treaty, he was transferred to the United States to serve his sentence. Lara appeals the United States Parole Commission's determination of his release date and term of supervised release. We affirm.

## I. BACKGROUND

On January 26, 1990, Lara was arrested in Nuevo Laredo, Tamaulipas, Mexico for killing and robbing Mario Alberto Salais. On May 31, 1990, Lara was sentenced to nine years imprisonment, with a sentence that commenced on the date of arrest. According to the documents supplied by Mexican authorities, Lara made two confessions.

In his first confession, Lara indicated that Salais tried forcing Lara to have sexual relations, and that after the sexual advances, Lara picked up a knife and the two men began to struggle. Lara stabbed Salais to death and then stole the jewelry that Salais was wearing.

The second confession varies slightly. In the second version, Lara states that, after the unwanted sexual advances, Lara decided to retaliate by stealing the jewelry Salais was wearing. After deciding to steal the jewelry, Lara searched for something to use to hit Salais. He found a knife, stabbed Salais several times, and then stole the jewelry.

In October 1991, Lara was transferred to the United States pursuant to a prisoner transfer treaty between the United States and Mexico. *See* Treaty on the Execution of Penal Sentences, November 26, 1976, United States—Mexico 20 UST 7399; T.I.A.S. No. 8718. On January 28, 1992, the Parole Commission conducted a hearing to determine Lara's date of release and period of supervised release. Based on the sentencing guidelines, the Parole Commission determined that Lara should be released "upon expiration of term," which was projected to be June 13, 1997—nine years less all applicable credits. The Commission further ordered Lara to serve a term of supervised release until January 25, 1999, the "full term date" of the Mexican sentence (nine years from date of release.)

## II. DISCUSSION

The Parole Commission has the authority to determine the release date for a foreign-sentenced prisoner who has been transferred to the United States pursuant to a prisoner transfer treaty. 18 U.S.C. § 4106A. Section 410A(b)(1)(A) requires the Parole Commission to "determine a release date and a period and conditions of supervised release for an offender ... as though the offender were convicted in a United States district court of a similar offense." Section 4106A(b)(1)(C) provides that "[t]he combined periods of imprisonment and supervised release that result from [the Parole Commission's] determination shall not exceed the term of imprisonment imposed by the foreign court on that offender." *See Hansen v. United States Parole Comm'n,* 904 F.2d 306, 310 (5th Cir.1990), *cert. denied,* --- U.S. ----, 111 S.Ct. 765, 112 L.Ed.2d 784 (1991); *Thorpe v. United States Parole Comm'n,* 902 F.2d 291, 292 (5th Cir.), *cert denied,* 498 U.S. 868, 111 S.Ct. 185, 112 L.Ed.2d 148 (1990) (both applying § 4106A). Recently, this court held that the combined periods of imprisonment and supervised release cannot be *less* than the foreign-court imposed sentence. *Cannon v. United States Dept. of Justice, U.S. Parole Comm'n,* 973 F.2d 1190, 1195-98 (5th Cir.1992) (*Cannon II*), *denying reh'g to* 961 F.2d 82 (5th Cir.1992) (*Cannon I* ), *petition for cert. filed,* No. 92-7521 (U.S. Feb. 2, 1993). *But cf. Molano-Garza v. U.S. Parole Comm'n,* 965 F.2d 20, 25 (5th Cir.1992) (affirming Parole Commission's release date and supervised release term, which resulted in a total sentence less than the total foreign-court-imposed sentence), *cert. denied,* --- U.S. ----, 113 S.Ct. 1009, 122 L.Ed.2d 158 (1993); *Thorpe,* 902 F.2d at 292-93

(same).  According to this court's opinion in *Cannon II,* the combined periods of incarceration and supervised release must *equal* the foreign-court imposed sentence.  *Cannon II,* 973 F.2d at 1195-98.

In our case, the Parole Commission determined that the offense most similar to the Lara's Mexican conviction is second-degree murder, 18 U.S.C. § 1111(a).  Based on the base offense level for second-degree murder and Lara's criminal history, the Parole Commission concluded that a sentence guideline range of 168 to 210 months would have applied if Lara was convicted of second-degree murder in a United States district court.  Because the guideline range exceeded the foreign sentence, the Parole Commission used the full foreign-sentence time *less* Lara's applicable credits as the appropriate "guideline" (projected to be approximately 88.5 months).[1]  *See Thorpe,* 902 F.2d at 292.  The Parole Commission used this "guideline"—full foreign-sentence time less applicable credits—as Lara's release date.  The Parole Commission further ordered Lara to thereafter serve a term of supervised release until January 25, 1999, the date his full nine-year Mexican sentence would have expired.  By requiring supervised release until January 25, 1999, the Parole Commission equalized the combined periods of incarceration and supervised release with the foreign sentence.

THE MOST SIMILAR OFFENSE

On appeal, Lara contends that the Parole Commission erred in determining that the offense most similar to his foreign conviction is second-degree murder.  Lara argues that the offense most analogous to his Mexican conviction is voluntary manslaughter.

Lara was convicted under Article 333 of the Tamaulipas Penal Code, which provides:  "A sentence of 8 to 16 years' imprisonment will be imposed on the person found responsible of committing a simple intentional homicide, unless a special sanction in this Code is referred to."  The Penal Code does not further define "simple intentional homicide."[2]

The United States murder statute, 18 U.S.C. § 1111(a), provides:

---

[1]The Parole Commission projected Lara's release date to be June 13, 1997.  According to the Parole Commission's brief, Lara's current release date is February 13, 1997, based on the Mexican work credit and good time credit.

[2]Article 334 of Tamaulipas Penal Code provides a lesser sentence if the homicide occurred during a fight in which the defendant risked being injured or killed.

Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

"Malice aforethought" encompasses three distinct mental states: (1) intent to kill; (2) intent to do serious bodily injury; and (3) extreme recklessness and wanton disregard for human life ("depraved heart"). *United States v. Browner,* 889 F.2d 549, 551-52 (5th Cir.1989). The United States manslaughter statute, 18 U.S.C. § 1112(a), defines voluntary manslaughter as the unlawful killing of a human being "[u]pon a sudden quarrel or heat of passion."

Lara contends that the evidence, mainly the two confessions, fails to demonstrate malice, but instead shows that Lara killed in the heat of passion. Both confessions mention the deceased's unwanted sexual advances and the ensuing struggle. But the second confession indicates that Lara stabbed the victim *after* deciding to rob him. Such intent prior to the killing is inconsistent with his claim that he killed in the "heat of passion," but is consistent with the Parole Commission's finding of malice.[3] We conclude that voluntary manslaughter is not the most similar crime. We note that, based on the second confession, Lara's crime might well be considered a first-degree murder. *See* 18 U.S.C. § 1111(a) ("murder ... committed in the perpetration of ... any ... robbery ... is murder in the first degree."). However, it is of no consequence that the Parole Commission based Lara's release date on second-degree murder rather than first-degree murder, for the same release date (the full term date less earned credit time) and the same term of supervised release (until January 25, 1999) would have been imposed under either classification. *See Thorpe,* 902 F.2d at 292.[4]

### III. CONCLUSION

[3]The Parole Commission also considered a statement attributed to Lara which Lara's attorney translates as "I got carried away." This statement does not negate a finding of malice. Rather, it is consistent with a finding of malice, which includes depraved heart.

[4]The Parole Commission did not err in refusing to depart downward from the guideline for the physical abuse alleged to have occurred while Lara was in the Mexican prison. As recognized by the Parole Commission, Lara's term of incarceration is already set much below the bottom of the guideline range for second degree murder.

The Parole Commission's determination of Lara's release date and term of supervised release is AFFIRMED.