# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31405 consolidated w/ 14-31407

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARK HEBERT,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, KING and HIGGINSON, Circuit Judges.

KING, Circuit Judge:

Defendant–Appellant Mark Hebert was sentenced by the district court to a term of 92 years of imprisonment after pleading guilty to a series of counts involving bank fraud. The district court imposed the sentence following a detailed four-day hearing where it found that Hebert had committed second degree murder in connection with the bank fraud counts. Hebert appeals his sentence, arguing that the evidence before the district court was insufficient to prove second degree murder, that the district court improperly increased his sentence under the Federal Sentencing Guidelines, and that his sentence is unconstitutional under the Fifth, Sixth, and Eighth Amendments. We

No. 14-31405

conclude that Hebert's evidentiary, statutory, and constitutional challenges are without merit. Accordingly, we AFFIRM the district court's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Original Crime

The case before us stems from a series of fraudulent activities committed in 2007 by Defendant–Appellant Mark Hebert. Until late 2007, Hebert was a deputy sheriff employed by the Jefferson Parish Sheriff's Office in Louisiana. In the early morning hours of August 2, 2007, Hebert responded, in his official capacity, to a one-car accident involving Albert Bloch in Metairie, Louisiana. Emergency personnel were at the scene of the accident and gave Hebert, the lead law enforcement investigator at the scene, Bloch's wallet and its contents to file as evidence according to standard police protocol. Bloch was admitted to a hospital following the accident. But Hebert, rather than filing Bloch's items as evidence, began using Bloch's information, checks, and debit card to make a series of purchases and withdrawals in Bloch's name. On the day of the accident, August 2, Hebert purchased two global positioning system units with Bloch's debit card. Then from August 2 to August 9, 2007, Hebert used the debit card to make cash withdrawals totaling $2,634.60 and purchases totaling $7,627.12. The debit card was also used to move $16,000 from Bloch's savings account to his checking account during that same period. Following his hospitalization, Bloch reported the fraud to his bank, Chase Bank, and a fraud restriction was placed on the card, causing the bank to decline two further attempted cash withdrawals by Hebert on August 10 and August 11, 2007. Despite no longer being able to use Bloch's debit card, Hebert forged checks drawn on Bloch's Chase Bank checking account in order to purchase several thousand dollars' worth of racing car products from September 17 to October 3, 2007.

No. 14-31405

Chase Bank issued Bloch a replacement debit card, which Bloch used for his own personal expenses from August 20 until October 1, 2007. During this period, Bloch frequented a bar, Joe's Caddy Corner, where he used the replacement card. However, Bloch disappeared after last being seen on October 2, by one of the bartenders at Joe's Caddy Corner. From October 2, 2007, onwards there were no credible reported sightings of Bloch. Bloch no longer contacted case workers from an organization, Responsibility House, that had been providing him with financial assistance. A credit check later showed no further credit activity involving Bloch after October 2, and Bloch failed to refill medications he needed for his chronic obstructive pulmonary disease. Bloch's car, a 1995 Volvo sedan, was later discovered parked in a "secluded parking lot" near Bloch's apartment and Joe's Caddy Corner with its license plate removed and its vehicle identification number covered up.

Around the time of Bloch's disappearance, Hebert obtained Bloch's replacement debit card and began using it for withdrawals and purchases. On October 3 and October 4, 2007, Hebert used the replacement card to make cash withdrawals totaling $405. Hebert also initiated a telephone transfer that "zeroed out" Bloch's savings account. On October 3, 2007, a Chase Bank employee refused to cash a forged check on Bloch's behalf for over $2,600— presented by Hebert—because the individual attempting to cash the check was not the same person as depicted on Bloch's driver's license. This led to Chase Bank placing a fraud restriction on Bloch's accounts. Hebert further attempted to make cash withdrawals totaling $607 after the fraud restriction was placed on the card. And on October 5, 2007, an individual from Hebert's telephone called Chase Bank and attempted to have the fraud restriction removed.

Around October 2007, Jefferson Parish detectives launched two parallel investigations, one investigating Bloch's disappearance and the other investigating Hebert in connection with the burglary of a local Infiniti dealer.

3

No. 14-31405

In the course of investigating the Infiniti burglary, detectives began connecting Hebert to Bloch's disappearance and discovered in Hebert's possession: checks belonging to Bloch, Bloch's mail and bank correspondence, Bloch's identification cards, a key to Bloch's Volvo, and a television set from Bloch's apartment. When confronted with evidence regarding Bloch's disappearance by law enforcement officers on November 20, 2007, Hebert claimed that he and Bloch had become friends after Bloch's accident and denied using Bloch's ATM card.[1] Hebert was not charged in state court for any fraud perpetrated against Bloch, but he was arrested on December 11, 2007, in relation to a series of frauds and thefts he had perpetrated against other individuals. Hebert later pleaded guilty to state charges emanating from this conduct and was incarcerated in the Louisiana Department of Corrections from May 19, 2008, to May 12, 2010.

**B. Hebert's Federal Indictment and Ensuing Plea Agreement**

Following Hebert's release from state prison, federal prosecutors pursued charges against Hebert in relation to Bloch's disappearance. On March 28, 2013, a grand jury returned a 60-count Indictment charging Hebert with several different offenses, including deprivation of rights under color of law, bank fraud, computer fraud, aggravated identity theft, and obstruction of a federal investigation. Paragraph J of the Indictment alleged, with respect to each bank fraud count, that Hebert:

> with specific intent, did kill, or participate in conduct that caused the death of, Albert Bloch to obtain VISA Replacement ATM/Debit Card #8461 and to prevent Albert Bloch from reporting to a law enforcement officer the scheme and artifice to defraud, deprivation

---

[1] At this interview, detectives noticed that Hebert was sweating profusely and appeared nervous. He also made the statement, regarding Bloch's disappearance, that: "If you had a body, I would already be in jail."

of rights under color of law, and any other crimes alleged in this Indictment.

Hebert pleaded not guilty to all counts at his initial arraignment on April 1, 2013.

On November 20, 2013, Hebert pleaded guilty pursuant to a plea agreement on seven counts: one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242; five counts of bank fraud, in violation of 18 U.S.C. § 1344; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). With respect to the bank fraud counts, the plea agreement specifically noted:

> Additionally, the parties understand that the issue of whether the defendant is responsible for the death of Albert Bloch and the appropriate guideline range is a contested matter that will have to be determined by the Court at the sentencing hearing. The Defendant understands that the Court will determine sentencing factors by a preponderance of the evidence.

Furthermore, the plea agreement memorialized that Hebert "specifically does not waive, and retains the right to bring a direct appeal of any sentence imposed."

An initial Presentence Investigation Report (PSR), filed on February 14, 2014, calculated an offense level of 22 for sentencing Hebert. The PSR calculated a Base Offense Level of 15 for bank fraud pursuant to U.S.S.G. § 2B1.1 because the underlying offense was bank fraud with a loss of more than $30,000 but not more than $70,000. The PSR added that Hebert's previous state convictions placed him in criminal history category II so that his criminal history and offense level set the guideline range of imprisonment at 46–57 months, plus two years running consecutively for the aggravated identity theft count. As a result, the initial PSR recommended a total of six to seven years of imprisonment. The initial PSR also noted that the government intended to

present evidence regarding Hebert's involvement in the death of Albert Bloch at sentencing and that this evidence could justify an upward variance.

However, the second, revised PSR, filed on March 21, 2014, calculated an offense level of 44, based on a Base Offense Level of 43 for first degree murder pursuant to U.S.S.G. § 2A1.1. The PSR stated that, because the underlying offense of bank fraud involved the alleged murder of Albert Bloch, U.S.S.G. § 2B1.1(c)(3) allowed a cross-reference to U.S.S.G. § 2A.1.1, which resulted in the increased Base Offense Level. The revised PSR cited Paragraph J of the Indictment in applying the cross-reference provision. Taking into account the new Base Offense Level and Hebert's criminal history, the PSR recommended life imprisonment under the Federal Sentencing Guidelines, restricted by the statutory maximums of the counts to which Hebert pleaded guilty, which amounted to a total of 153 years.

Following the submission of the revised PSR and before sentencing, Hebert submitted pre-hearing memoranda arguing that there was insufficient evidence to prove Bloch's murder, that adjudication of the murder allegation by the district court judge would violate his Fifth Amendment due process and Sixth Amendment jury trial rights, and that it was improper to calculate his Base Offense Level by cross-referencing U.S.S.G. § 2A1.1.

## C. Hebert's Federal Sentencing

Beginning on July 21, 2014, the district court held a detailed four-day evidentiary hearing to determine whether or not Hebert was responsible for the death of Bloch as charged in the Indictment. During the four-day hearing, the government proffered evidence supporting its theory that Hebert had murdered Bloch. The government argued that Bloch had been murdered on or around October 2, 2007, as, after that date, Bloch no longer patronized his local bar in Metairie, Bloch no longer contacted his case workers, a credit report showed no further credit activity by Bloch, and Bloch's Volvo was later found

abandoned under suspicious circumstances. The government argued that Bloch could not have remained alive, despite his disappearance, because he suffered from chronic obstructive pulmonary disease and needed medications for the condition, which were not refilled after Bloch's disappearance. The government also presented testimony from Bloch's case worker at Responsibility House stating that Bloch had not shown any suicidal tendencies, suggesting that he had not killed himself.

The government then pointed to evidence linking Hebert to Bloch's disappearance. By 4:13 p.m. on October 3, 2007, Bloch's replacement debit card was in Hebert's possession, which Hebert used to make a withdrawal in a town neighboring Metairie. And Hebert would have been in the area of Bloch's apartment and neighborhood bar around the time of Bloch's disappearance as Hebert worked his normal shift as a traffic officer in Metairie, Louisiana from 10 p.m. on October 2 until 6:00 a.m. on October 3. The government also provided evidence from the previous state investigation into Bloch's disappearance. That evidence showed that Hebert, at one point, had in his possession Bloch's checkbook, identification cards, television, replacement debit card, car keys, and correspondence from Bloch's bank that was dated after October 3, 2007. And although Hebert had previously explained that he had Bloch's checkbook because he was Bloch's "friend," a later search of cellphone records showed no communication between Hebert and Bloch. In addition, it was shown that inside Bloch's abandoned Volvo was a note detailing a paid security detail at a Coca-Cola bottling plant that was available only to Jefferson Parish Sheriff's Office deputies.[2]

---

[2] Bloch was not eligible for the security detail. Hebert was eligible but did not work that specific security detail; rather, Hebert often worked motorcycle details. An FBI agent investigating the note found that none of the other deputies that had been in or around Bloch's car during the investigation recognized the note.

No. 14-31405

Following the four-day hearing, the district court issued its factual findings on July 29, 2014. The district court first recited the definition of murder under 18 U.S.C. § 1111 and then summarized the evidence before it. On the question of Bloch's disappearance, the district court noted that, since October 2, 2007, Bloch had no car, no medication, and had not been seen by anyone since October 2, "despite a remarkably thorough search." The district court ultimately found that Bloch "was murdered sometime on the evening of October 2 or early morning hours of October 3." Despite two witnesses testifying that they had seen Bloch following October 2, 2007, the court did not credit this witness testimony stating that it would require the court "to ignore common sense, logic, and the overwhelming evidence to the contrary."[3] The district court recognized that while "[t]here [was] no body and there [was] no clear crime scene," there were "scenarios that the Court believe[d] ma[d]e sense" as to a finding of murder. According to the court, "under all scenarios it [was] clear that Mark Hebert killed Albert Bloch." In particular, the court pointed to Hebert's possession of Bloch's debit card by October 3, 2007, the way Bloch's Volvo had been abandoned, and evidence showing that Hebert had entered Bloch's apartment following his disappearance. The court concluded that the government had "proven beyond a preponderance of the evidence that Mark Hebert murdered Albert Bloch" and "that the evidence show[ed] by clear and convincing evidence that Mark Hebert's conduct satisfie[d] the elements of second degree murder."

After the hearing, a third PSR was filed on August 7, 2014, and then a final revised PSR was filed on September 15, 2014. The final PSR calculated

---

[3] The court noted that one witness did not know Bloch personally and had testified that he had only seen "a man who look[ed] similar to Albert Bloch." The court found that the other witness was "completely lacking in credibility" as that witness provided inconsistent and varied statements as to seeing Bloch.

No. 14-31405

an offense level of 44, based on a Base Offense Level of 38 for second degree murder pursuant to U.S.S.G. § 2A1.2, once again citing Paragraph J of the Indictment in applying the cross-reference provision of U.S.S.G. § 2B1.1(c)(3). The guideline imprisonment range remained restricted by the statutory maximum so that Hebert could not have been sentenced to any term beyond 153 years. Like the initial PSR, the final PSR noted that an upward variance might be justified in sentencing Bloch based on evidence at the sentencing hearing demonstrating that Hebert murdered Bloch.

On November 10, 2014, the district court held its sentencing hearing. At this hearing, the court adopted the recommended findings of fact in the PSR and found that Hebert's Base Offense Level could be determined by a cross-reference to U.S.S.G. § 2A1.2. The court departed downward from the recommendation of life imprisonment and ultimately sentenced Hebert to 92 years (1,104 months) of imprisonment, followed by three years of supervised release. The court's sentence was based on the cross-reference recommendation included in the PSR, but the court noted that "the application of the cross-reference in the context of a conviction for bank fraud is a matter of first impression in the Fifth Circuit." The court further stated "that in the event it is found that the cross-reference does not apply, [it] would have applied a substantial upward variance and [Hebert's] sentence would have been exactly the same." Explaining the grounds for the upward variance, the court stated to Hebert:

> I have no doubt that Mr. Hebert killed Mr. Bloch and disposed of his body for his personal financial gain. Mr. Hebert, you used your position of trust and authority to satisfy your insatiable desire for money and property of other people. For reasons that I will never understand, that was not enough. You wanted everything that belonged to Albert Bloch, even his life. Mr. Hebert, like many parents, I have taught my children from the time they were babies that they could rely on and trust police officers. Your violation of

9

No. 14-31405

that sacred trust is unconscionable. This heinous crime is beyond comprehension. Accordingly, while [the sentence] appears to be a downward variance from the guideline with indeed the cross-reference, it would be a considerable upward variance if the cross-reference is not applied. So considering the factors in 18 U.S.C. § 3553 that require the Court to impose a sentence that is sufficient but not greater than necessary to comply with its purposes and that the Court consider the nature and circumstances of the offense and the history and characteristics of the defendant, this sentence would reflect the seriousness of the offense, would promote respect for the law, and would provide just punishment for the offense. It would also protect the public from further crimes of the defendant and deter further criminal conduct.

On November 23, 2014, Hebert moved for reconsideration or correction of his sentence under Federal Rule of Criminal Procedure 35 and the court's inherent authority, repeating his pre-hearing arguments and adding an Eighth Amendment challenge to his 92-year sentence. The district court denied the motion in orders dated November 24, 2014, and December 19, 2014. On December 19, 2014, Hebert filed notices of appeal from the final judgment, the final amended judgment, the November 24 order, and the December 19 order. On appeal, Hebert argues that the district court committed the following errors: the district erred in finding second degree murder on the evidence before it; the district court improperly increased his sentence by applying a cross-reference; the district court violated his Fifth and Sixth Amendment rights by making a finding of second degree murder at sentencing; and the district court rendered a sentence that is unconstitutionally excessive under the Eighth Amendment. Hebert preserved the errors for appeal and timely appealed.

## II. STANDARD OF REVIEW

On review of "a district court's sentencing decision," our analysis proceeds "in two steps." *United States v. Robinson*, 741 F.3d 588, 598 (5th Cir. 2014). First, we must "ensure that the district court committed no significant

10

procedural error, such as failing to calculate . . . the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Second, if the sentence is procedurally sound or if the procedural error is harmless, this Court 'consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Robinson*, 741 F.3d at 598 (alteration in original) (quoting *United States v. Neal*, 578 F.3d 270, 273 (5th Cir. 2009)).

In this two-step review, "[w]e review the district court's interpretation or application of the Guidelines *de novo* and its factual findings for clear error." *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007). On review of a district court's factual findings, "[w]e 'will deem the district court's factual findings clearly erroneous only if, based on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed.'" *United States v. Valdez*, 453 F.3d 252, 262 (5th Cir. 2006) (quoting *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir. 2002)). And "when faced with a preserved constitutional challenge to the Guidelines' application, our review is *de novo*." *United States v. Preciado–Delacruz*, 801 F.3d 508, 511 (5th Cir. 2015), *petition for cert. pending*, No. 15-7360 (Sept. 15, 2015).

## III. HEBERT'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE SUPPORTING HIS SENTENCE

Hebert first challenges his sentence on evidentiary grounds. In particular, Hebert argues that the government failed to prove that he murdered Bloch by a preponderance of the evidence and that the district court erred in finding second degree murder as a result. Hebert argues that there is no DNA or blood evidence indicating that Bloch was killed and points to witness testimony suggesting that Bloch may still be alive. Moreover, Hebert

argues that the record is devoid of evidence establishing his mental state or motivations for the murder.  At the outset we note that neither party disputes that Hebert's 92-year sentence cannot be sustained without a finding of second degree murder.   The finding of murder was integral to the sentence because otherwise the district court could not have applied the cross-reference to U.S.S.G. § 2A1.2 and could not have applied an upward variance.[4]   For the reasons below, however, we find that the court did not clearly err in making a finding of second degree murder.

"Findings of fact for sentencing purposes need only be found by a preponderance of the evidence." *United States v. Simpson*, 741 F.3d 539, 556 (5th Cir. 2014).  On appellate review of judicial factfinding at sentencing, we will not find "clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Odom*, 694 F.3d 544, 547 (5th Cir. 2012) (quoting *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).  And under clear error review, even "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

The district court's finding of murder is plausible in light of the record as a whole.  The court was careful to recite the elements of murder under federal law[5] and recounted substantial circumstantial evidence suggesting

---

[4] The government concedes that the 92-year sentence would not be substantively reasonable without a finding of murder.

[5] The statute provides, in relevant part:

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a

that Hebert killed Bloch. The court noted that the last credible sighting of Bloch was on October 2, 2007, that Hebert was on shift in Metairie around that time, that Hebert later came into possession of Bloch's debit card and car keys, and that Bloch's vehicle was later found abandoned under suspicious circumstances. Moreover, the court reached its ultimate conclusion—that Hebert murdered Bloch—after a thorough and fact-specific four-day hearing.

Although Hebert argues that that there were witnesses who reported seeing Bloch after October 2, the district court addressed that testimony and did not find it persuasive, particularly in light of Bloch's failure to return home or obtain his medication after October 2. Moreover, we cannot fault the factfinder's choice between "two permissible views of the evidence." *Id.* Hebert's other argument—that the lack of a body, crime scene, or DNA evidence does not support a murder finding—also fails. Courts have noted that murder may be found on the basis of circumstantial evidence in the absence of a body. *See Gov't of V.I. v. Harris*, 938 F.2d 401, 408 (3d Cir. 2008) ("Courts have relied on circumstantial evidence in proving the corpus delicti for first degree murder in both federal and state court cases . . . ." (footnotes omitted)). The district court here identified substantial circumstantial evidence, which convinced the court that, under all scenarios, Hebert killed Bloch sometime around October 2. Finally, and contrary to Hebert's assertions otherwise, the record contains evidence suggesting Hebert's intent in committing the murder.

---

premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

18 U.S.C. § 1111. The term "malice aforethought," as used in the statute "encompasses three distinct mental states: (1) intent to kill; (2) intent to do serious bodily injury; and (3) extreme recklessness and wanton disregard for human life ('depraved heart')." *Lara v. U.S. Parole Comm'n*, 990 F.2d 839, 841 (5th Cir. 1993).

No. 14-31405

The district court also found that "Mr. Hebert killed Mr. Bloch and disposed of his body for his personal financial gain." On this evidence, we cannot say that the district court's finding of second degree murder was "illogical or implausible." *Anderson*, 470 U.S. at 577.

## IV. HEBERT'S GUIDELINES CHALLENGE TO HIS SENTENCE

Hebert's primary challenge to his sentence is that the district court erred in calculating his Base Offense Level under the Guidelines when the court cross-referenced the guideline in U.S.S.G. § 2A1.2, the second degree murder guideline. The cross-reference here had the effect of increasing Hebert's Base Offense Level to 38 and authorizing a life term of imprisonment under the Guidelines. Hebert argues that the application of this cross-reference to his sentence was procedural error for two reasons. First, he argues that U.S.S.G. § 2B1.1(c)(3)—the sentencing guideline on bank fraud, which allows for cross-referencing—only allows cross-references for the "count of conviction," and murder was not in Hebert's counts of conviction because he expressly refused to admit the additional allegation of murder in Paragraph J of his Indictment. Second, Hebert argues that U.S.S.G. § 2B1.1(c)(3) only permits cross-references if "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct)." U.S.S.G. § 2B1.1(c)(3). Because the alleged offense committed by Hebert is a state law killing and is not specifically covered by another guideline, Hebert contends that the cross-reference is improper for this additional reason.[6] Hebert argues that this procedural error was not harmless

---

[6] Hebert notes that while there is a federal murder statute, this statute applies to murder "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111. He argues that the federal murder statute is the offense covered in U.S.S.G. § 2A1.2 and that state murder offenses are not covered by this guideline.

14

No. 14-31405

because his sentence, prior to the application of the cross-reference, would have been only six to seven years of imprisonment.

As the district court noted, whether a federal bank fraud offense permits a cross-reference to the second degree murder guideline is an issue of first impression in the Fifth Circuit. However, we need not reach this issue of first impression because Hebert's sentence may be affirmed on the district court's alternate basis for the sentence—that the sentence is appropriate as an upward variance based on Bloch's murder. *See United States v. Bonilla*, 524 F.3d 647, 656–59 (5th Cir. 2008) (affirming a non-guideline sentence as an upward variance despite the lower court's error in calculating a guideline sentence when the court imposed the non-guideline sentence as an alternative); *see also United States v. Urbina*, 542 F. App'x 398, 399 (5th Cir. 2013) (per curiam) (unpublished) ("We need not consider the propriety of [a] sentence as an upward departure . . . because the sentence may be affirmed on the court's alternate basis as an upward variance justified by the 18 U.S.C. § 3553(a) sentencing factors."). Assuming, without holding, that the district court could have made a procedural error in applying the cross-reference, the error would be harmless given this alternate basis for the sentence, which was also premised on Bloch's murder. *See United States v. Groce*, 784 F.3d 291, 296 (5th Cir. 2015) ("An erroneous guidelines range calculation is harmless if '(1) [ ] the district court would have imposed the same sentence had it not made the error, and (2) [ ] it would have done so for the same reasons it gave at the prior sentencing.'" (alterations in original) (quoting *United States v. Ibarra–Luna*, 628 F.3d 712, 714 (5th Cir. 2010))).

We find that the upward variance in Hebert's sentence is substantively reasonable. Absent the application of the cross-reference, Hebert's 92-year sentence falls within the statutory maximum of 153 years he could have received but is higher than the six to seven year sentence his initial PSR

calculated based on the Guidelines. While we have noted that a within-Guideline sentence is afforded a rebuttable presumption of reasonableness, "a court may impose a non-Guideline sentence," otherwise known as an upward variance, that is "higher . . . than the relevant Guideline Sentence." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). In imposing an upward variance, "the district court must more thoroughly articulate its reasons . . . than when it imposes a sentence under authority of the Sentencing Guidelines." *Id.* "These reasons should be fact-specific and consistent with the sentencing factors enumerated in [18 U.S.C. §] 3553(a),"[7] and "[t]he farther a

---

[7] The federal sentencing statute provides, in relevant part:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the applicable category of offense issued by the Sentencing Commission];
> . . .
> (5) any pertinent policy statement [issued by the Sentencing Commission];
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

sentence varies from the applicable Guidelines sentence, 'the more compelling the justification based on factors in section 3553(a)' must be." *Id.* (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). Nonetheless, "a checklist recitation of the section 3553(a) factors is neither necessary nor sufficient," and "[t]he purpose of the district court's statement of reasons is to enable the reviewing court to determine whether, as a matter of substance, the sentencing factors in section 3553(a) support the sentence." *Id.* And "[u]ltimately, our 'review for substantive reasonableness is "highly deferential," because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant.'" *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015) (quoting *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011)); *see also id.* ("Even a significant variance from the Guidelines does not constitute an abuse of discretion if it is 'commensurate with the individualized, case-specific reasons provided by the district court.'" (quoting *United States v. McElwee*, 646 F.3d 328, 338 (5th Cir. 2011))).

The district court here conducted a fact-specific, four-day hearing where it heard evidence on Bloch's murder and Hebert's background. At sentencing, the district court stated that it was considering a number of the 18 U.S.C. § 3553(a) factors in imposing the upward variance, including the nature and circumstances of the offense, Hebert's history and characteristics, the seriousness of the offense, just punishment, and the need to protect the public. While the 92-year sentence was a significant upward variance from the recommendation in the PSR, the court specifically noted that the 18 U.S.C. § 3553(a) factors merited an upward variance because Hebert had abused his

---

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

position of trust and authority as a police officer to take Bloch's life.  And this court as well as other courts have approved of similarly significant upward variances where appropriate.  *See, e.g.*, *United States v. Brantley*, 537 F.3d 347, 348 (5th Cir. 2008) (affirming a sentence of incarceration 253% higher than the top of the Guidelines range); *United States v. Smith*, 417 F.3d 483, 492–93 (5th Cir. 2005) (affirming a sentence of incarceration nearly 300% higher than the top of the Guidelines range); *see also United States v. Sebolt*, 598 F. App'x 159, 161–62 (4th Cir. 2015) (per curiam) (unpublished) (affirming an upward variance to life imprisonment following a conviction for advertising child pornography).  In light of our deferential review and the thorough findings made by the district court, we cannot say that the district court abused its discretion and imposed a substantively unreasonable sentence when it imposed the upward variance of 92 years based on Bloch's murder.

## V. HEBERT'S FIFTH AND SIXTH AMENDMENT CHALLENGES TO HIS SENTENCE

Hebert's primary constitutional challenge to his sentence is that it violates the Due Process Clause of the Fifth Amendment and his jury trial right under the Sixth Amendment.  Hebert argues that the district court engaged in improper factfinding that increased his sentence when the court, rather than a jury, found that Hebert murdered Bloch.  While Hebert does not claim that all judicial factfinding at sentencing is improper, Hebert claims that the fact of murder found by the district court is a fact "that the law makes essential to his punishment."  *United States v. Booker*, 543 U.S. 220, 232 (2005).  This is because Hebert's 92-year sentence would have been substantively unreasonable under the post-*Booker* sentencing regime absent a judicial finding of murder.  Hebert then cites to concurrences from Supreme Court opinions and dissents from denials of certiorari suggesting that judicial factfinding violates a defendant's constitutional right to a jury trial where the

factfinding renders reasonable an otherwise substantively unreasonable sentence.  *See, e.g.*, *Jones v. United States*, 135 S. Ct. 8 (2014) (Scalia, J., dissenting from denial of certiorari); *Marlowe v. United States*, 555 U.S. 963 (2008) (Scalia, J., dissenting from denial of certiorari); *Rita v. United States*, 551 U.S. 338, 374 (2007) (Scalia, J., concurring) ("There will  inevitably be *some* constitutional violations under a system of substantive reasonableness review, because there will be some sentences that will be upheld as reasonable only because of the existence of judge-found facts.").  Hebert argues further that the district court's judicial factfinding effectively increased his mandatory minimum sentence in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013),[8] because the federal sentencing statute, 18 U.S.C. § 3553(a) requires a judge to impose a "sufficient" sentence and his 92-year sentence would not have been sufficient absent the judicial factfinding of murder.  *See id.* at 2163 ("[F]acts that increase mandatory minimum sentences must be submitted to the jury.").

Hebert's Fifth and Sixth Amendment challenges are foreclosed by our precedent, however, because we have held that courts can engage in judicial factfinding where the defendant's sentence ultimately falls within the statutory maximum term.  Following *Booker*, we noted that "[t]he sentencing judge is [still] entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).  And in *Hernandez* our circuit "foreclosed as-applied Sixth Amendment challenges to sentences within the statutory maximum that are reasonable only if based on judge-found facts."

---

[8] In *Alleyne*, the Supreme Court held "that any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" and must be "found beyond a reasonable doubt."  *Alleyne*, 133 S. Ct. at 2155, 2163.

633 F.3d at 374. We added that a "within-guidelines and above-guidelines sentence [imposed within the statutory maximum can be] reasonable solely based on judge-found facts." *Id.*[9] As a result, the judicial factfinding that made Hebert's 92-year sentence substantively reasonable does not violate the Fifth and Sixth Amendments because his sentence was ultimately within the 153-year statutory maximum he could have received for the seven counts to which he pleaded guilty.[10]

Hebert's *Alleyne* challenge also fails under our precedent. As we held in *United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013), "[t]he *Alleyne* decision applies only to facts that increase a statutory mandatory minimum sentence," so that judicial factfinding at sentencing does not pose an *Alleyne* problem where a defendant's sentence "d[oes] not expose him to a mandatory minimum sentence." *Id.* at 693. Hebert does not point to any of his underlying convictions in arguing that the court's factfinding has increased his mandatory minimum sentence. Instead, Hebert's argues that any sentence must be "sufficient" under 18 U.S.C. § 3553(a), the federal sentencing statute, and that any judicial factfinding making the sentence "sufficient" effectively increases the mandatory minimum. But 18 U.S.C. § 3553(a) only provides a number of sentencing factors for courts to consider and imposes no mandatory minimum.[11] Therefore, Hebert fails to demonstrate that the judicial

---

[9] Our precedent, in this respect, comports with the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

[10] Hebert's citations to non-binding concurrences and dissents from denial of certiorari have no bearing on our analysis. *See, e.g.*, *Am. Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 802 n.10 (5th Cir. 2000) ("We note in passing that . . . a denial of petition for certiorari . . . is not binding authority.").

[11] Indeed, if Hebert were correct that 18 U.S.C. § 3553(a) provided a mandatory minimum, then essentially any judicial factfinding at sentencing would pose an *Alleyne* problem. This cannot be so given that the *Alleyne* Court was careful to note: "Our ruling . . . does not mean that any fact that influences judicial discretion must be found by a jury. We

No. 14-31405

factfinding of murder violates his due process right and constitutional right to a jury trial.

## VI. HEBERT'S EIGHTH AMENDMENT CHALLENGE TO HIS SENTENCE

Hebert's final challenge to his sentence is that his 92-year term is a cruel and unusual punishment that violates the Eighth Amendment because the term is an excessive sanction that is grossly disproportionate to the underlying crime. Hebert's Eighth Amendment challenge wades partly into his other arguments against his sentence. He argues that his sentence is grossly disproportionate because he was convicted of violating three federal statutes, but his sentence was driven by a finding of murder, which was "a sentencing factor outside the facts of his conviction."

We have recognized that the Eighth Amendment "preclude[s] a sentence that is greatly disproportionate to the offense, because such sentences are 'cruel and unusual.'" *McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992). Following this principle, in Eighth Amendment challenges, we "initially make a threshold comparison of the gravity of [the defendant's] offenses against the severity of [the defendant's] sentence." *Id.* at 316. If we infer from this comparison "that the sentence is grossly disproportionate to the offense," then we "compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Id.* In determining whether a sentence is grossly disproportionate this court has frequently used the Supreme Court's decision in *Rummel v. Estelle*, 445 U.S. 263 (1980), as a benchmark. *See, e.g.*, *United States v. Woods*, 576 F. App'x 309, 309 (5th Cir. 2014) (per curiam) (unpublished); *United States v. Gonzales*,

---

have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2163.

121 F.3d 928, 943–44 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010). In *Rummel*, the Supreme Court upheld a mandatory life sentence under a Texas recidivist statute for a defendant convicted of three separate non-violent felony offenses, the last of which was a felony offense of obtaining $120.75 under false pretenses. *Rummel*, 445 U.S. at 284–85.

In light of this framework, we have noted that "[o]ur review of Eighth Amendment challenges is narrow." *United States v. Parker*, 505 F.3d 323, 330 (5th Cir. 2007). This is because "[o]n review . . . this court does not 'substitute its judgment for that of the legislature nor of the sentencing court as to the appropriateness of a particular sentence; it should decide only if the sentence is within the constitutional limitations.'" *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir. 2010) (quoting *United States v. Harris*, 566 F.3d 422, 436 (5th Cir. 2009)). As a result, "[w]e have previously recognized, following guidance from the Supreme Court, that successful Eighth Amendment challenges to prison-term lengths will be rare." *Harris*, 566 F.3d at 436 (alteration in original) (quoting *United States v. Looney*, 532 F.3d 392, 396 (5th Cir. 2008)).

When compared to the sentence in *Rummel*, Hebert's 92-year term is not grossly disproportionate. Hebert's sentence is, in fact, more proportionate to his underlying offenses than the sentence was in *Rummel*. Like the defendant in *Rummel*, Hebert's 92-year sentence is the functional equivalent of life imprisonment. But Hebert's offense here is graver as Hebert murdered Bloch and committed identity theft and a series of bank frauds while abusing his authority as a sheriff's deputy.[12] *See United States v. Rogers*, 551 F. App'x 174,

---

[12] Although Hebert suggests that there is an Eighth Amendment problem with Bloch's murder acting as the basis for Hebert's sentence, he does not identify any law to support this

176 (5th Cir. 2014) (per curiam) (unpublished) (finding a sentence was not grossly disproportionate because "[t]he gravity of [the defendant's] offense [was] greater, and the sentence less severe, than in *Rummel*"); *see also Looney*, 532 F.3d at 396–97 (finding that a 548-month sentence for non-violent drug and gun offenses, which was the functional equivalent of a life sentence for the defendant, was not grossly disproportionate). Moreover, Hebert's 92-year sentence was within the statutory maximum of 153 years he could have received for the crimes to which he pleaded guilty. We have previously upheld sentences under the Eighth Amendment, like Hebert's, that were the result of upward variances but still came within statutory limits. *See United States v. Forester*, 557 F. App'x 380, 381 (5th Cir. 2014) (per curiam) (unpublished) ("[W]e are unpersuaded that [the defendant's] sentence of 81 months for a fraud crime with a maximum penalty of ten years was 'grossly disproportionate.'").[13] In light of the following and given our narrow review of Eighth Amendment proportionality challenges, we find that Hebert's sentence is not grossly disproportionate under the Eighth Amendment.

## VII. CONCLUSION

For the foregoing reasons, we AFFIRM the sentencing decision of the district court.

---

point. As we note above, there are no other constitutional or statutory issues with the court's consideration of Bloch's murder in determining Hebert's 92-year sentence.

[13] In this context, a sister circuit has noted that "[i]n general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Delacruz–Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005).