# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-50811

—————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Charles Ray Lerma,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CR-121-1

———————————————————————

Before Jones, Barksdale, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Under U.S.S.G. § 2P1.1(b), a prisoner who escapes from "non-secure custody" is eligible for a reduction of his offense level—a seven-level reduction if he returns voluntarily "within ninety-six hours," and a four-level reduction if he returns voluntarily after ninety-six hours. But § 2P1.1(b) provides for no reduction whatsoever if the prisoner escapes from a *secure* facility. And that's what happened here.

Charles Ray Lerma escaped from custody at Dismas Charities by jumping the facility's exterior fence in violation of 18 U.S.C. § 751. He

No. 23-50811

voluntarily returned the same day. His presentence investigation report (PSR) designated his escape from Dismas Charities as an escape from non-secure custody, but did not credit him for returning within ninety-six hours. So the PSR reduced his offense by four levels, not seven.

Lerma now challenges his sentence as procedurally and substantively unreasonable. In particular, he argues that the district court clearly erred by failing to apply a seven-level reduction under U.S.S.G. § 2P1.1(b)(2). We disagree. Leaping a fence constitutes escape from secure custody under U.S.S.G. § 2P1.1(b). We accordingly affirm his sentence.

## Background

Lerma is no stranger to sentencing proceedings. His extensive criminal history includes juvenile adjudications for murder, arson, and unauthorized use of a vehicle. He also has fifteen adult convictions that include minor in possession of alcohol, public intoxication, drug possession, and aiding and abetting in drug distribution. Between 2015 and 2020, Lerma received three terms of supervised release. But each term of supervised release was subsequently revoked due to Lerma's misconduct. Following the third revocation, Lerma was transferred to Dismas Charities, a residential reentry center. Three months later, he leaped Dismas' perimeter fence but, notably for purposes of this appeal, voluntarily returned later that same day.

Lerma was arrested and charged with one count of escape from custody under 18 U.S.C. § 751. He pleaded guilty. The probation officer prepared Lerma's PSR with a base-level offense of thirteen. The officer then applied two reductions: a two-level reduction for acceptance of responsibility and a four-level decrease under U.S.S.G. § 2P1.1(b)(3). U.S.S.G. § 2P1.1(b)(3) provides a four-level reduction where an individual escapes from a non-secure facility yet did *not* return voluntarily within ninety-six hours. As a result, Lerma's base offense level was seven.

2

No. 23-50811

By contrast, U.S.S.G. § 2P1.1(b)(2) provides a seven-level reduction where the individual *does* return voluntarily within ninety-six hours—as Lerma did here.

The probation officer next calculated his criminal history as Category III. The report awarded no points for fourteen of Lerma's fifteen adult convictions or any juvenile convictions. With an offense level of seven and a Category III criminal history, the Sentencing Guidelines' recommendation was four to ten months imprisonment.

However, the PSR also highlighted several factors under 18 U.S.C. § 3553(a)(2) to justify an increase from the Guideline recommendation, including the nature and circumstances of the offense, the seriousness of the offense, Lerma's history and characteristics, the need to promote respect for the law and provide just punishment, the need to deter future criminal conduct, and the need to protect the public. The report also highlighted Lerma's previous sentence revocations, and noted that the instant offenses of escape and theft took place while he was in custody.

At sentencing, the district court stated that, after considering the PSR, it would depart upward from the Guidelines' recommendation. The court sentenced Lerma to the statutory maximum. Invoking the § 3553 (a)(2) factors, the court stated that it considered Lerma's criminal history to be "way underrepresented" and noted Lerma's repeated squandering of favorable reductions in the past and the circumstances of the instant offense. Lerma's counsel objected, arguing that the "tenfold increase from the sentencing guidelines" was "procedurally and substantively unreasonable."

## Discussion

Lerma challenges his sentence on three grounds. First, Lerma alleges that his sentence was procedurally unreasonable because the district court failed to adequately explain its variance from the Sentencing Guidelines.

Second, he argues that his sentence was substantively unreasonable under the totality of the circumstances. Finally, he asserts that the district court erred by not applying a seven-level reduction to his total offense level because he voluntarily returned to custody on the same day that he escaped.

Reviewing courts evaluate properly preserved sentencing objections in a two-step inquiry to determine whether they are "plainly unreasonable." *United States v. Cano*, 981 F.3d 422, 425 (5th Cir. 2020). First, the court determines whether the district court committed any significant procedural errors, such as failing to explain its reasoning for departing from the Sentencing Guidelines. *Id.* Then the court reviews the substantive reasonableness for abuse of discretion. *United States v. Foley*, 946 F.3d 681, 685 (5th Cir. 2020).

We hold that Lerma has not shown the district court's sentence was procedurally or substantively unreasonable. We also hold that, although the court erred in awarding a four-level reduction under § 2P1.1(b)(3), this error did not substantively affect Lerma's rights, because he was not entitled to a reduction under § 2P1.1(b) at all. We thus affirm Lerma's sentence.

## I.

We review Lerma's procedural unreasonableness claim first. Lerma contends that the district court's sentence was procedurally unreasonable for failure to explain its reasoning adequately.

To begin with, the parties dispute the appropriate standard to apply. Lerma argues that this issue was properly preserved and that abuse of discretion review therefore applies. *See*, *e.g.*, *United States v. Bostic*, 970 F.3d 607, 612 (5th Cir. 2020). The Government argues that the error was not properly preserved, and that plain error review is therefore proper. We agree with the Government.

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the [claimed] error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). Here, Lerma's counsel objected to the sentence, but did not claim there was an improper factor used or that Lerma's history and characteristics did not justify the variance. The Government argues that this statement was insufficiently general and denies the court the opportunity to identify and correct any errors. *See United States v. Coto-Mendoza*, 986 F.3d 583, 586 (5th Cir. 2021). We agree and accordingly review for plain error.

To be sure, "[w]e have never required a party to express its objection in minute detail or ultra-precise terms." *United States v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006). But merely reciting the magnitude of a departure from the Sentencing Guidelines is insufficient to preserve procedural error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). Simply objecting that the sentence was a "tenfold increase" is nothing more than a statement of mathematical fact and was not sufficient to preserve procedural error.

To prove plain error, Lerma must show that (1) the district court erred, (2) the error is clear or obvious, and (3) the error affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Lerma alleges that the district court erred in failing to adequately explain this variance.

Stating that a variance is based on "prior similar drug conduct" in the PSR is sufficient. *United States v. Rhine*, 637 F.3d 525, 529–30 (5th Cir. 2011). So is checking four of the § 3553(a) factors in the "Statement of Reasons" form and explaining that the court "opted . . . for an above-guidelines sentence driven by the § 3553(a) factors." *United States v. Conlan*, 786 F.3d 380, 394 (5th Cir. 2015). And so too is a statement that highlights a defendant's history and characteristics, the need to deter future conduct and

protect the public, and the nature and circumstances of the offense. *United States v. Fraga*, 704 F.3d 432, 439 (5th Cir. 2013).

Here the district court highlighted the defendant's history and characteristics, the need to deter future conduct and protect the public, and the nature and circumstances of the offense. The district court thus sufficiently stated its reasoning. Lerma fails to show the requisite clear or obvious error.

## II.

Next, we examine Lerma's substantive unreasonableness claim. Upward departures are substantively unreasonable "where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Churchwell*, 807 F.3d 107, 123 (5th Cir. 2015).

To be sure, the greater the variance, the more compelling justification is needed. *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). But our review is highly deferential. *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015).

Lerma's first argument is that the court failed to avoid unwarranted sentencing disparities among defendants with similar records. He relies primarily on national sentencing data for federal escape offenses. But reliance on such data here is unavailing. National averages, such as those Lerma cites, "do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases." *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007). The district court evaluated Lerma's full criminal history, characteristics, the nature of the offense, and the § 3553(a) factors and concluded that an upward variance was justified. National statistics "are basically meaningless in considering

whether a disparity with respect to [Lerma] is warranted or unwarranted." *Id*. at 545.

Lerma's next argument is that the district court's reasoning does not justify the magnitude of the deviation. Lerma alleges that the court improperly considered his entire adult and juvenile criminal record. But courts are mandated by 18 U.S.C. § 3553(a)(1) to consider "the history and characteristics of the defendant" when sentencing. Our court does not limit that inquiry to recent offenses—to the contrary, juvenile offenses may be considered and given significant weight when sentencing above the Guidelines recommendations. *Smith*, 440 F.3d at 709. So it was not improper for the district court to determine that all of Lerma's criminal history was relevant under § 3553(a)(1) and (a)(2). The district court did not err in considering Lerma's full criminal history.

The court also noted Lerma's prior revocations and the nature of the present offense. These findings, along with Lerma's criminal history and the need to promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public, are a proper individualized assessment to substantively justify Lerma's sentence. We have affirmed similar sentences. *See e.g.*, *United States v. Herbert*, 813 F.3d 551, 561-63 (5th Cir. 2015), *United States v. Madrid*, 610 Fed. Appx. 359, 390 (5th Cir. 2015). There is no abuse of discretion here.

## III.

Finally, Lerma contends that the district court erred by not applying a seven-level reduction to his base offense level under U.S.S.G. § 2P1.1(b)(2). This claim was not preserved, so plain error review applies.

Even if a defendant makes the requisite showing of plain error, we may exercise our discretion to correct the error "only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States*

*v. Blanco*, 27 F.4th 375, 380 (5th Cir. 2022).  Unnecessary deprivation of liberty undermines all three values. *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018).  This is especially true where a district court's error "was based on a mistake made in the presentence investigation report by the Probation Office, which works on behalf of the District Court." *Id.*

U.S.S.G. § 2P1.1(b)(2) provides a seven-level reduction if "the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours."  If a defendant escapes from non-secure custody and does not qualify under § 2P1.1(b)(2), they receive a four-level reduction.  § 2P1.1(b)(3).  Here, the PSR reduced Lerma's offense level by four levels under § 2P1.1(b)(3).

Lerma contends that this reduction was an error because he voluntarily returned to Dismas Charities the same day that he escaped.  Thus, he argues that he should have received the seven-level reduction under (b)(2).  Had the PSR been accurately calculated, his total offense level would have been four, rather than seven.  That level, combined with his criminal history category of III, would have produced a Guidelines range of zero to six months, rather than the four to ten months the PSR calculated.  Although the district court ultimately departed from the Guidelines as a basis for its sentence, Lerma argues that the record shows that there's a reasonable probability that his sentence would have been different.

The Government does not dispute Lerma's factual claim that he returned within ninety-six hours to Dismas Charities.  But the Government maintains that the district court did not err because defendants are only entitled to this reduction if they escaped from "non-secure custody."

In support of its position, the Government relies on the Commentary attached to U.S.S.G. § 2P1.1(b)(2), which defines "non-secure custody" as "custody with no significant physical restraint."  The Commentary also

observes that escape from "an institution with no physical perimeter" would constitute an escape from non-secure custody. U.S.S.G. § 2P1.1(b)(2) n.1.

The parties agree that Lerma jumped a fence to escape Dismas Charities. The Government thus concludes that Lerma escaped from secure custody and should not have received a seven-level reduction.

We agree. Leaping a fence to escape a community corrections center, community treatment center, halfway house, or similar facility, constitutes escape from secure custody. Defendants who do so are ineligible for a reduction under U.S.S.G. § 2P1.1(b). *See*, *e.g.*, *United States v. Clark*, 37 F.3d 1496, 1496 (4th Cir. 1994) (holding that leaping a four-foot fence constitutes escape from secure custody); *United States v. Sarno*, 24 F.3d 618, 624 (4th Cir. 1994) (same).

A fence is a physical perimeter that can constitute a significant physical restraint under U.S.S.G. § 2P1.1(b). *See Clark*, 37 F.3d at 1496. Dismas Charities is a fenced facility surveilled by cameras. The fence was designed to keep residents like Lerma in—not to keep cows out. *Cf. United States v. Shaw*, 979 F.2d 41, 43 (5th Cir. 1992) (fencing that merely keeps livestock out of a facility does not constitute secure custody).

So the district court did not ultimately err when it failed to credit Lerma for returning within ninety-six hours. To the contrary, the district court erred in giving Lerma a four-level reduction under § 2P1.1(b)(3), because that too requires that the defendant escape from "non-secure custody." As a result, the district court should not have reduced Lerma's total offense level under § 2P1.1(b) *at all*.

\* \* \*

We affirm.